IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| T.S., by and through his next friend, N.O.; and G.A.; *individually and on behalf of all others similarly situated*, | § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CASE NO. 1:19-cv-809-RP |
| The Burke Foundation d/b/a Burke Center for Youth, | § § § § | Collective Action - FLSA Class Action - Rule 23 |
| *Defendant.* | § | Jury Trial Demanded |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs T.S., by and through his next friend N.O., and G.A. respectfully file this Original Complaint on behalf of themselves and all others similarly situated, and allege as follows:

### I.   INTRODUCTION

1.    Plaintiffs are former residents of Pathfinders Ranch, a residential treatment center ("RTC") for boys aged 11 to 18 operated by Defendant The Burke Foundation d/b/a Burke Center for Youth (hereinafter "Pathfinders-RTC"). Pathfinders-RTC required children with severe emotional disorders under its care, including Plaintiffs, to perform hours of unpaid manual labor and other work every week, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*., ("FLSA") and the Texas common law theories of quantum meruit, unjust enrichment, and money had and received. Plaintiffs bring their FLSA claims as an "opt-in" collective action, and their Texas common law claims as an "opt-out" class action under Federal Rule of Civil Procedure 23, on behalf of themselves and all other similarly-situated persons, to recover damages as redress for Pathfinders-RTC's violations of their rights.

## II.     JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216 for the claims brought under the FLSA, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because all of the acts or omissions giving rise to this action occurred in Driftwood, Hays County, Texas.

## III.     PARTIES

4.      Plaintiff T.S. is a minor and resides in Round Rock, Texas. T.S. was a resident of Pathfinders-RTC from April 2018 to December 2018. T.S. has consented to the filing of this action for violations of the FLSA. *See* Exhibit A.  N.O., T.S.'s attorney ad litem, has volunteered and agreed to serve as Plaintiff T.S.'s next friend.

5.      Plaintiff G.A. is a resident of Highlands, Texas. He was a resident at Pathfinders-RTC from August 2016 to December 2018. G.A. recently turned 18 years old, and has consented to the filing of this action for violations of the FLSA. *See* Exhibit B.

6.      Defendant The Burke Foundation is a domestic nonprofit corporation formed and existing under the laws of the State of Texas and whose principal place of business is 20800 Farm Road 150 W, Driftwood, Texas 78619. It may be served with process by serving its registered agent, Steven J. Fournier, at 20800 Farm Road 150 W, Driftwood, Texas 78619.

## IV.     FACTS

### A.  RESIDENTIAL TREATMENT CENTERS

7.      The Texas Health and Human Services Commission ("HHSC") and the Department

of Family and Protective Services ("DFPS") regulate and issue licenses for general residential operations ("GROs"). A GRO is an operation that provides childcare for 13 or more children under the age of 18 years. RTCs are a type of GRO.[1]

8.      RTCs "usually house youths with significant psychiatric, psychological, behavioral, or substance abuse problems who have been unsuccessful in outpatient treatment or have proved too ill or unruly to be housed in foster care, day treatment programs, and other nonsecure environments."[2]  RTCs "frequently offer a combination of substance abuse and mental health treatment programs . . . along with 24-hour supervision in a highly structured (often staff-secure) environment."[3]

9.      RTCs are the most restrictive type of GRO and specialize in providing therapeutic treatment to children with severe emotional or mental-health issues.[4]

10.     HHSC requires that RTCs have a Licensed Child Care Administrator ("LCCA").[5] The LCCA is responsible for the general child-care operation of the RTC.[6]

11.     HHSC requires RTCs that directly provide treatment services to 25 or more children or over 30% of the resident population to have a Treatment Director on staff.[7]

12.     A Treatment Director is responsible for the direction and management of the RTC treatment program, which includes clinical care and therapeutic care.[8]

---

[1] 26 TEX. ADMIN. CODE ANN. § 748.43(27).
[2] DEV. SERV. GROUP, INC., OFF. OF JUV. JUST. AND DELINQ. PREV., LITERATURE REVIEW: RESID. TREAT. CTRS 1 (2011), https://www.ojjdp.gov/mpg/litreviews/Residential_Treatment_Centers.pdf (last visited Aug. 6, 2019).
[3] *Id.*
[4] *M. D. v. Abbott*, 907 F.3d 237, 244 (5th Cir. 2018); *see also* 26 TEX. ADMIN. CODE ANN. § 748.43(55).
[5] 26 TEX. ADMIN. CODE ANN. §§ 748.151, 748.531.
[6] 40 TEX. ADMIN. CODE ANN. § 745.8901.
[7] 26 TEX. ADMIN. CODE ANN. § 748.601.
[8] *Id.* § 748.603.

13.     HHSC categorizes children based on their level of need. The level of need ranges from basic, to moderate, to specialized, to intensive. The level to which a child is assigned establishes the primary treatment needs of the child.

14.     At the basic level, a child is merely in need of care because he or she has been removed from the parent's home due to abuse or neglect. Although the child may briefly act out in a manner that is minimally disruptive, the child's "behavior is considered typical for the child's age."[9]

15.     In contrast to the basic service level, children assigned to the specialized care level are high-risk and are primarily in need of treatment for severe physical or mental health impairments or emotional disorders. Children who require specialized care will exhibit characteristics indicative of mental health and emotional disorders, may have been diagnosed with a substance abuse problem involving alcohol or drugs, or have multiple physical or intellectual or developmental disabilities.[10]

16.     RTCs serve children assigned to the moderate, specialized, and intensive service levels.

17.     Before a child may be referred to an RTC, the child must have been diagnosed with a mental health condition recognized in the current version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") by a licensed mental health professional, and the diagnosed condition must cause severe mental, behavioral, and emotional impairments.[11] During all times relevant to this action, DSM-5 was the most current DSM published by the American Psychiatric

---

[9] 40 TEX. ADMIN. CODE ANN. § 700.2303.
[10] *Id.*§ 700.2343.
[11] TEX. DEP'T OF FAMILY PROT. SERV'S, CHILD PROTECTIVE SERVICES HANDBOOK, 2392.1 REFERRAL CRITERIA (December 2015), https://www.dfps.state.tx.us/handbooks/CPS/Files/CPS_pg_2200.asp (last accessed Aug. 6, 2019).

Association.

18.     The children residents of an RTC have the "right to seek employment, keep the child's own money, have a bank account in the child's name, and get paid for any work done for the operation as part of the child's service plan or vocational training, with the exception of assigned routine duties that relate to the child's living environment, such as cleaning the child's room, or other chores, or work assigned as a disciplinary measure."[12]

19.     An RTC is prohibited from using video surveillance unless the child surveilled (a) is five years old or younger; (b)  has primary medical needs; or (c) has sleep, emotional, or mental concerns that require heightened supervision.[13]

## B.  PATHFINDERS-RTC

20.     Since 1973, Pathfinders-RTC has operated in Driftwood, Texas, and has provided domiciliary care to boys with emotional disorders that require general treatment and observation.

21.     A psychologist, physician, or psychiatrist evaluates all residents at Pathfinders-RTC before or soon after admission into Pathfinders-RTC.

22.     As an RTC, Pathfinders-RTC is required to have an LCCA. Pathfinders-RTC's LCCA is John Victor Morrel, who is also a Licensed Clinical Social Worker ("LCSW"). Mr. Morrel also acts as the Treatment Director at Pathfinders-RTC.

23.     The State of Texas authorizes LCSWs to diagnose and treat mental, emotional, and behavioral disorders.[14] As the Treatment Director, Mr. Morrel directs the "treatment team," which provides a variety of therapeutic treatments to residents, including weekly individual psychotherapy and weekly group therapies.

---

[12] 26 TEX. ADMIN. CODE ANN. § 748.1101(b)(3)(L).
[13] *Id.* § 748.3353.
[14] 22 TEX. ADMIN. CODE ANN. § 781.202(f).

24.     Pathfinders-RTC has mental health professionals on-site who provide specialized care and treatment, including therapeutic and medical support, to all its residents. Specifically, Pathfinders-RTC provides individual psychotherapy, group therapy, family therapy through video conferencing, and scheduled visits for psychiatric services.

25.     Staff at Pathfinders-RTC use Trust-Based Relational Intervention ("TBRI") when interacting with and treating residents. TRBI is "an attachment-based, trauma-informed intervention that is designed to meet the complex needs of vulnerable children."[15]

26.     Pathfinders-RTC typically houses around 20 boys, mostly aged 11 to 18, and will accept children with a history of aggression, suicidal ideation, and substance abuse, as well as children who have been adjudicated delinquent offenders, including children who have committed sexual offenses. Pathfinders-RTC offers therapeutic and treatment services for all of its residents, and is a Licensed Sex Offender Provider. HHSC has recognized that the population at Pathfinders-RTC includes sexual offenders, who require a high level of supervision.

27.     On information and belief, all residents at Pathfinders-RTC have been diagnosed with emotional disorders, and all have been assigned to the specialized care level.

28.     Pathfinders-RTC incorporates the use of 24-hour video surveillance inside and outside the dorm rooms of all residents to maintain order, including to monitor and control the behavior of residents with a history of aggression towards others.

29.     Children at Pathfinders-RTC are allowed varying degrees of freedom and privileges (e.g., participation in on-site group activities and off-campus outings) based on their behavior. The type of activities to which Pathfinders-RTC may allow or restrict access include off-site employment, Boy Scouts, music programs, and church groups. Campus outings include going

---

[15] Karyn Purvis Institute of Child Development, "Trust-Based Rational Intervention," https://child.tcu.edu/about-us/tbri/ (last accessed Aug. 9, 2019).

shopping, going to the movies, and other activities.

30.     In addition to increased freedom, Pathfinders-RTC employs a token economy—known as Burke Bucks—to reward good behavior. Residents may only use Burke Bucks at the Pathfinders-RTC campus store when they are deemed to be demonstrating positive behavior. When residents have behavioral issues or commit related infractions, Pathfinders-RTC may deduct from their accumulated Burke Bucks as a disciplinary measure.

31.     Although Pathfinders-RTC expects children to complete daily chores, it allows children to perform separate "Work Projects" and other assigned work tasks as part of their service plans. This work is not imposed as a disciplinary measure.

32.     Although Pathfinders-RTC is located in the western portion of the Dripping Spring Independent School District ("DSISD"), most if not all of the residents attend a charter school on the premises. The school, called Pathfinders Camp, was formed through a partnership with the University of Texas – University Charter School ("UT-UCS"). Children who reside in the western portion of DSISD would typically attend Walnut Spring Elementary, Dripping Springs Middle School, and Dripping Springs High School.

33.     Pathfinders Camp is only available to the children who are residents at Pathfinders-RTC. According to the UT-UCS website, Pathfinders Camp "services emotionally disturbed and learning-disabled boys."[16]

34.     Every Pathfinders Camp teacher is certified in special education. On information and belief, most, if not all, children at Pathfinders-RTC qualify for special education services and have Individualized Education Plans ("IEPs"). Pathfinders-RTC staff participate in admission, review, and dismissal meetings to develop IEPs designed to provide special education services for

---

[16] University of Texas Charter School, "Description," https://utcharter.org/description/ (last visited Aug. 6, 2019).

its residents. Further, the Pathfinders Camp principal participates in weekly treatment meetings at Pathfinders-RTC.

35.     At all times relevant to this action, Pathfinders-RTC was responsible for ensuring that Plaintiffs and other residents attend school.

36.     In addition to attending school, at all times relevant to this action, residents routinely worked many hours per week for **Pathfinders-RTC** on unskilled jobs, including, but not limited to, construction, maintenance, and lawn care.

37.     The work performed by the residents had no educational value, little vocational value, and the work was not related to any scholastic or vocational curriculum.

38.     The work assigned to the residents was in addition to their required daily chores, such as cleaning living spaces and maintaining personal garden patches.

39.     Because Pathfinders-RTC would otherwise have had to hire laborers to perform the unskilled labor performed by Plaintiffs and other residents, **Pathfinders-RTC** received a financial benefit from the residents' work.

40.     At all times relevant to this action, **Pathfinders-RTC**, through their "administration treatment team," controlled and supervised the work performed by Plaintiffs and other residents.

41.     At its sole discretion, **Pathfinders-RTC** would sometimes award Plaintiffs and other residents with Burke Bucks for work performed. **Pathfinders-RTC** did not use a clear system for distributing Burke Bucks, and Plaintiffs and other residents did not always receive Burke Bucks when they worked.

42.     Burke Bucks were not equivalent to cash paid free and clear nor "other facilities" within the meaning of Section 3(m) of the FLSA. Plaintiffs and other residents received no wages for any of their labor.

43.     At all times relevant to this action, Pathfinders-RTC knowingly, willfully, or with reckless disregard, carried out their illegal pattern or practice of failing to pay Plaintiffs and other residents the minimum wage for their hours worked.

44.     At all times relevant to this action, Pathfinders-RTC failed to maintain and preserve complete and accurate records of Plaintiffs' and other residents' hours of work as required by the FLSA, or records related to the distribution of Burke Bucks.

**C. PLAINTIFF T.S.**

45.     On or about September 1, 2017, T.S. received a psychological evaluation and was diagnosed with mental health conditions including Adjustment Disorder with Mixed Anxiety and Depressed Mood.

46.     T.S. was in a foster home before he was referred to Pathfinders-RTC. Following an incident at school, T.S. was removed from foster care and placed in an inpatient psychiatric program. After one month, he was released to a new foster home. He was removed from that foster home and placed at Pathfinders-RTC on April 3, 2018, with estimated length of stay of six to 18 months based on the success of treatment.

47.     DFPS assigned T.S. to the specialized care level when he was admitted to Pathfinders-RTC.

48.     When he was admitted to Pathfinders-RTC, T.S. was informed of his "Child Rights" pursuant to Subchapter H of Chapter 748 of Title 26 of the Texas Administrative Code, which governs the minimum standards for GROs. Such rights include the right to be paid for work done for the operation.[17]

49.     During T.S.'s time at Pathfinders-RTC, he was treated with all or one of the

---

[17]  26 TEX. ADMIN. CODE ANN. § 748.1101(b)(3)(L)

following medications at any given time: (a) Depakote ER; (b) Risperdal; (c) Vyvanse; (d) Lexapro; (e) Certirizine HCL; (f) Divalproex Sod ER; and (g) Risperisone. Pathfinders-RTC required T.S. to take his medications.

50.     Pathfinders-RTC provided the following treatments to T.S. for his emotional disorders: (a) individual therapy; (b) family therapy; (c) crisis counseling and therapy; (d) daily living skills counseling; (e) periodic group counseling; (f) equine assisted psychotherapy, which is provided at the direction of an Equine Program Manager; (g) medication review and evaluation by a psychiatrist at least once per month when psychotropic medications were prescribed as recommended by the treatment team; (h) anger management group therapy; and (i) substance abuse prevention group therapy.

51.     During T.S.'s time at Pathfinders-RTC, he was determined to be a risk of harm to others and a risk for unsafe behavior.

52.     During T.S.'s time at Pathfinders-RTC, he was under 24 hour video surveillance.

53.     During T.S.'s time at Pathfinders-RTC, he was physically restrained multiple times for various behavioral issues. As part of its treatment program, Pathfinders-RTC utilizes emergency behavioral interventions including physical restraint to control the behaviors of its residents. Pathfinder-RTC's staff members are required to be trained in crisis intervention techniques such as de-escalation to minimize the excessive use and harmful impact of physical restraints.

54.     During T.S.'s time at Pathfinders-RTC, he was eligible for special education services based on the disabilities categories of other health impairment and learning disability.

55.     T.S. worked various Work Projects at Pathfinders-RTC from April 6, 2018, to December 2, 2018. Most work activities were merely labeled "Work Project" in the records

maintained by Pathfinders-RTC, but the records do document specific work such as cleaning buildings, weed-eating, moving rocks, clearing cedar, camp cleanup, moving office supplies, mopping, sweeping, cooking/helping with dinner, kitchen help, washing vans, trash pick-up, and moving tiles.

56.     Pathfinders-RTC did not pay T.S. wages for any of the work he performed.

57.     On information and belief, Pathfinders-RTC did not maintain accurate records of all the time T.S. worked.

58.     On information and belief, Pathfinders-RTC intermittently awarded T.S. with Burke Bucks for work he performed. He received no other compensation.

### D. PLAINTIFF G.A.

59.     G.A. was in a foster home before he was referred to the Pathfinders-RTC. G.A. was referred to the Pathfinders-RTC after he was admitted to a hospital for mental health issues. He was placed at Pathfinders-RTC on or about August 3, 2016, with estimated length of stay of six to 18 months, depending on the success of treatment.

60.     When he was admitted to Pathfinders-RTC, G.A. was informed of his "Child Rights" pursuant to Subchapter H of Chapter 748 of Title 26 of the Texas Administrative Code, which governs the minimum standards for GROs. Such rights include the right to be paid for work done for the operation.[18]

61.     On November 30, 2016, G.A. received a psychological evaluation and was diagnosed with the following conditions: (a) Disruptive Mood Dysregulation Disorder; (b) Oppositional Defiant Disorder, Severe; (c) Attention Deficit/Hyperactivity Disorder, Combined Presentation; (d) Post-traumatic Stress Disorder; and (g) Learning Disorder with impairment in

---

[18] 26 TEX. ADMIN. CODE ANN. § 748.1101(b)(3)(L)

math.

62.    DFPS assigned G.A. to the specialized care level when he was admitted to Pathfinders-RTC.

63.    During G.A.'s time at Pathfinders-RTC, he was treated with all or one of the following medication at any given time: (a) Depakote; (b) Abilify; (c) Intuniv, (d) Guandacine; (e) Divalproex, and (f) Tenex. Pathfinders-RTC required G.A. to take his medications.

64.    Pathfinders-RTC provided the following treatments to G.A. for his emotional disorders: (a) individual therapy; (b) family therapy; (c) crisis counseling and therapy; (d) daily living skills counseling; (e) periodic group counseling; (f) equine assisted psychotherapy, which is provided at the direction of an Equine Program Manager; (g) medication review and evaluation by a psychiatrist at least once per month when psychotropic medications are prescribed as recommended by the treatment team; (h) anger management group therapy; and (i) substance abuse prevention group therapy.

65.    During G.A.'s time at Pathfinders-RTC, he was identified as being a risk of harm to self and others with a history suicidal ideation. According to Pathfinders-RTC staff, G.A. would normally engage in self-harm and other destructive behavior.

66.    During G.A.'s time at Pathfinders-RTC, he was under 24 hour video surveillance.

67.    During G.A.'s time at Pathfinders-RTC, he was physically restrained multiple times for various behavioral issues. On one occasion, his arm was broken as a result.

68.    During G.A.'s time at Pathfinders-RTC, he was eligible for special education services.

69.    G.A. worked on various Work Projects from August 2016 to February 2018. Work activities were often labeled "Work Project" on the records kept by Pathfinders-RTC. G.A. worked

on jobs similar to those worked on by T.S., with the addition of basic construction work and various other maintenance, janitorial work, and landscaping work.

70.     On information and belief, Pathfinders-RTC did not maintain complete or accurate records of the time G.A. worked.

71.     On information and belief, Pathfinders-RTC intermittently awarded G.A. with Burke Bucks for work he performed. He received no other compensation.

**CLAIMS FOR RELIEF**

**COUNT 1: FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq*.**
**(OPT-IN COLLECTIVE ACTION)**

72.     This count sets forth a claim for declaratory relief and damages for Defendant's violations of the FLSA.

73.     Defendant The Burke Foundation is a covered enterprise under 29 U.S.C. §§ 203(s)(1)(B) and/or (r)(2)(A), in that it is primarily engaged in providing care to the sick and/or mentally ill who reside at Pathfinders-RTC.

74.     Mental illness or emotional instability is the primary factor for admission to Pathfinders-RTC, and caring for the mentally ill or infirm is the primary function and purpose of Pathfinders-RTC.

75.     Plaintiffs and other residents were "employees" of Pathfinders-RTC within the meaning of the FLSA. 29 U.S.C. § 203(d) - (e).

76.     Plaintiffs bring their FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all other similarly-situated current and former residents of Pathfinders-RTC.

77.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the "FLSA Class" as follows: "All residents of Pathfinders-RTC who engaged in 'Work

Projects' and/or work assignments in addition to their required daily chores while residing at Pathfinders-RTC's facility in Driftwood, Texas, during the relevant statute of limitations."

78.     All potential FLSA Class Members are similarly situated because, among other things, they all suffered from the same policies and practices of Pathfinders-RTC, including the failure to pay residents the minimum wage for compensable work performed at Pathfinders-RTC.

79.     All potential FLSA Class Members worked primarily as manual laborers, performing "Work Project" tasks similar in nature to those performed by Plaintiffs.

80.     Defendant did not pay Plaintiffs or potential FLSA Class Members the minimum wage for any hours worked.

81.     Defendant failed to maintain complete and accurate records of the hours worked by potential FLSA Class Members or of any compensation paid or other benefit provided to potential FLSA Class Members as required by the FLSA.

82.     Defendant's failure to pay Plaintiffs and FLSA Class Members their federally mandated minimum wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

83.     For these violations, Plaintiffs and all potential FLSA Class Members are entitled to recover their unpaid minimum wages, an equal amount in liquidated damages, attorney's fees, and costs of court pursuant to 29 U.S.C. § 216(b).

## COUNT 2: TEXAS COMMON LAW
### (OPT-OUT RULE 23 CLASS ACTION)

89.     This count sets forth a claim for damages resulting from Defendant's failure to pay Plaintiffs the reasonable value of the labor that they provided to Defendant, for which they are entitled to relief pursuant to the Texas common law doctrines of quantum meruit, unjust enrichment, and/or money had and received.

90.     During the time Plaintiffs and other children were residents at Defendant's Driftwood facility, Defendant complied with its obligation, pursuant to 26 Tex. Admin. Code § 748.1103, to inform them of their rights under 26 Tex. Admin. Code § 748.1101(b)(3)(L) to keep their own money and to get paid for any labor performed for Defendant apart from routine chores or work assigned as a disciplinary measure.

91.     At all times relevant to this lawsuit, Plaintiffs and other residents regularly performed valuable labor for "Work Projects" and other assigned work tasks beyond their routine chores. Such work was not assigned as a disciplinary measure.

92.     Defendant created an implied agreement to pay for such labor provided by Plaintiffs other residents for Defendant's benefit, and Defendant knowingly accepted Plaintiffs' and other residents' labor.

93.     Defendant was obligated to pay Plaintiffs and other residents for such labor as part of their minimum obligations as a GRO.

94.     In failing to pay Plaintiffs and other residents for such labor, Defendant retained money that in equity and good conscience belonged to Plaintiffs and other residents.

95.     Plaintiffs assert their Texas common law claims as a Class Action pursuant to Federal Rule of Civil Procedure Rule 23(b)(3).

96.     Plaintiffs bring the claims on behalf of the "Rule 23 Class," which, pending any modifications necessitated by discovery, is defined as follows: "All residents of Pathfinders-RTC who engaged in 'Work Projects' and/or non-disciplinary work assignments in addition to their required daily chores while residing at Pathfinders-RTC's facility in Driftwood, Texas, during the relevant statute of limitations."

97.     The members of the putative Rule 23 Class are so numerous that joinder of all potential class members is impracticable. Plaintiffs do not know the exact size of the class, as that information is within the control of Defendant. However, on information and belief the class consists of approximately 70 or more residents who performed labor within the relevant statute of limitations.

98.      The Rule 23 Class claims asserted by Plaintiffs are typical of the claims of all of the potential Rule 23 Class Members because no residents who performed "Work Projects" or other assigned work tasks beyond their routine chores were paid the reasonable value of their labor by Defendant.

99.     All of Plaintiffs' and the potential Rule 23 Class Members' claims arise from the same course of conduct by Defendant, and the relief sought is common.

100.     Plaintiffs will fairly and adequately protect and represent the interests of the class.

101.     Plaintiffs are represented by counsel experienced in litigation on behalf of low-wage workers and in class actions.

102.     The prosecution of separate actions by the individual potential Rule 23 Class Members would create a risk of inconsistent or varying adjudications with respect to individual potential Rule 23 Class Members that would establish incompatible standards of conduct for Defendant.

103.     Plaintiffs are unaware of any members of the putative Rule 23 Class who are interested in presenting their claims in a separate action.

104.     Plaintiffs are unaware of any pending litigation commenced by members of the Rule 23 Class concerning the instant controversies.

105.    This class action will not be difficult to manage due to the uniformity of claims among the Rule 23 Class Members, the susceptibility of the claims to class litigation, and the use of representative testimony and representative documentary evidence.

106.    The contours of the class will be easily defined by reference to Defendant's records.

107.    For these violations, Plaintiffs and all potential Rule 23 Class Members are entitled to injunctive relief, as well as to recover the reasonable value of their unpaid labor, together with interest, attorney's fees, and costs of court.

## ATTORNEY'S FEES

108.    Plaintiffs are entitled to and seek an award of their reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216 and Chapter 38 of the Texas Civil Practice and Remedies Code.

## JURY DEMAND

94.    Plaintiffs hereby demand that this action be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a.    Declare Defendant The Burke Foundation in violation of each of the claims for relief set forth above;

b.    Certify Count 1 above to proceed as a collective action under 29 U.S.C. § 216(b), and authorize the appropriate notice of this suit, and the opportunity to opt into it, to be provided to all potential members of the FLSA Class;

c.    Certify and maintain Count 2 above as a class action under Federal Rule of Civil Procedure 23, with Plaintiffs as designated class representatives and with their counsel appointed as class counsel.

d.   Award damages to Plaintiffs and FLSA Class Members for Defendant's failure to pay wages under the FLSA and an equal amount of liquidated damages and permanently enjoin Defendant from further violations of FLSA and its attendant regulations;

e.   Award damages to Plaintiffs and Rule 23 Class Members in the amount of the reasonable value of their unpaid labor, together with pre-judgment interest, and permanently enjoin Defendant from continuing its practice of keeping money that in equity and good conscience belongs to the Rule 23 Class Members;

f.   Award Plaintiffs and Class Members the costs of this action;

g.   Award Plaintiffs and Class Members reasonable attorney's fees;

h.   Award Plaintiffs and Class Members post-judgment interest; and

i.   Grant such other relief as this Court deems just and proper.

Respectfully submitted,

By:   /s/ Rebecca Eisenbrey

Rebecca C. Eisenbrey
Attorney-In-Charge
State Bar No. 24097646
reisenbrey@equaljusticecenter.org
Anna Bocchini
State Bar No. 24057410
abocchini@equaljusticecenter.org
EQUAL JUSTICE CENTER
510 S. Congress Ave., Suite 206
(512) 474-0007 ext. 132

Ted Evans
State Bar No. 24099351
tevans@disabilityrightstx.org
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(832) 681-8224

Peter Hofer
State Bar No. 09777275
phofer@drtx.org
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/   Rebecca Eisenbrey*