IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| T.S., by and through his next friend, N.O.; and G.A.; *individually and on behalf of all others similarly situated*, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. 1:19-cv-809-RP |
| The Burke Foundation d/b/a Burke Center for Youth, | § § § § | |
| Defendant. | § § | |

**PLAINTIFFS' MOTION FOR NOTICE TO CLASS MEMBERS AND
FOR CONDITIONAL CERTIFICATION AS AN FLSA COLLECTIVE ACTION**

### I.   INTRODUCTION

Plaintiffs are former residents of Pathfinders Ranch, a residential treatment center ("RTC") for boys aged 11 to 18 operated by Defendant The Burke Foundation d/b/a Burke Center for Youth (hereinafter "Pathfinders-RTC"). They filed suit, on behalf of themselves and all others similarly situated ("Class Members"), seeking redress for Pathfinders-RTC's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") and the Texas common law theories of quantum meruit, unjust enrichment, and money had and received. Plaintiffs alleged that they and Class Members – all of whom were children with severe emotional disorders – were regularly required by Pathfinders-RTC to perform hours of manual labor and other work without any monetary compensation. Plaintiffs bring their FLSA claims as an "opt-in" collective action, and their Texas common law claims as an "opt-out" class action under Federal Rule of Civil Procedure 23. Plaintiffs now file this Motion for Notice to Class Members and for Conditional Certification as an FLSA Collective Action pursuant to 29 U.S.C. § 216(b).

## II. REQUEST FOR CONDITIONAL CERTIFICATION

Pursuant to the collective action provisions of the FLSA, Plaintiffs seek conditional certification and Court-supervised notice to the following "FLSA Class" or "Class Members":

> All current and former residents of Pathfinders-RTC's facility in Driftwood, Texas, who were 21 years old or younger as of August 15, 2019, and who, in addition to their required daily chores, engaged in "Work Projects" and/or work assignments while residing and receiving treatment at Pathfinders-RTC.

Plaintiffs meet the lenient standard for notice to be issued to the FLSA Class.

### A. The law favors collective actions and authorizes the District Court to order issuance of notice to potential plaintiffs.

An employee alleging a violation of the FLSA may bring an action on behalf of all "other similarly situated employees." 29 U.S.C. § 216(b). "FLSA collective actions are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding common issues of law and fact arising from the same alleged activity." *Mendoza v. AFO Boss, LLC*, 402 F. Supp. 3d 355, 359 (W.D. Tex. 2019) (quoting *Tolentino v. C & J Spec—Rent Servs., Inc.*, 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010)); *see also Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

A collective action under § 216(b) requires individuals to "opt in" to the class by filing a written consent. *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225 (5th Cir. 2011) (unpublished) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)). Because the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," *Hoffmann-La Roche*, 493 U.S. at 170, the FLSA authorizes the Court to manage the collective action, authorize notice, and monitor preparation and distribution of the notice, *id.* at 170–73. "Court authorization of notice serves the

legitimate goal of avoiding a multiplicity of duplicative suits and setting a cutoff date to expedite disposition of the action." *Id.* at 172. Section 216(b) empowers and encourages this Court to issue notice to all potential plaintiffs in an FLSA action, and it should do so in this case.

**B. Courts in this jurisdiction apply the lenient first prong of the two-step Lusardi approach to determine whether to approve notice to potential plaintiffs.**

Like other courts in the Fifth Circuit, this Court uses the two-step process laid out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), to determine whether named plaintiffs and putative class members are similarly situated such that an FLSA collective action should be certified under § 216(b). *See, e.g.*, *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (reviewing district court's decision to decertify a collective action at the second stage of the *Lusardi* analysis); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008) (describing the "typical[]" two-step process); *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018) (applying *Lusardi*); *Minyard v. Double D Tong, Inc.*, 237 F. Supp. 3d 480, 484 (W.D. Tex. 2017) (same); *Joaquin v. Hinojosa*, 219 F. Supp. 3d 582, 585 (W.D. Tex. 2016) (same); *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640, 643 (W.D. Tex. 2013). The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage." During the notice stage, the district court decides, usually based on the pleadings, whether to authorize notice to individuals who may be similarly situated to the named plaintiffs, thereby conditionally certifying a collective action. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). After conditional certification, the action then generally proceeds through discovery as collective action. *Id.* at 1214. Once discovery is "largely complete," a defendant may move for decertification based on the factual information elicited through discovery. *Id.*

Because the first stage takes place prior to the completion of discovery, the standard for notice is "fairly lenient," *id.*, "requiring 'nothing more than substantial allegations that the putative

class members were together the victims of a single decision, policy, or plan,'" *Joaquin*, 219 F. Supp. 3d at 585 (quoting *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). Only at the second stage, at the close of discovery, does the Court make a more rigorous "factual determination" as to whether the class members are similarly situated. *Mooney*, 54 F.3d at 1214.

As a result of the lenient notice-stage standard, the district court's determination "typically results in conditional certification." *Id.* (internal quotations omitted). Ultimately, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from *circumstances purely personal to the plaintiff*, and not from any generally applicable rule, policy or practice." *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) (quoting *Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820, 825 (N.D. Tex. July 6, 2007)) (alteration in original) (emphasis added).

### C. Plaintiffs satisfy the lenient standard and are entitled to notice based on the allegations in the Complaint.

To satisfy the lenient notice-stage standard, Plaintiffs must only present "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Joaquin*, 219 F. Supp. 3d at 585. The allegations in Plaintiffs' First Amended Complaint ("Complaint," ECF No. 19) and the statements in Plaintiffs' sworn declaration (attached hereto as Exhibit A) are sufficient to meet this standard and justify conditional certification of the FLSA Class.

*1. Plaintiffs and Class Members are similarly situated with respect to work performed.*

Plaintiffs' Complaint alleges that Pathfinders-RTC violated the FLSA by permitting and/or requiring Plaintiffs and Class Members to work many hours per week on unskilled jobs, including, but not limited to, construction, maintenance, and lawn care. (Compl. at ¶ 36.) This work was assigned as part of Plaintiffs' and Class Members' service plans. (*Id.* at ¶ 31.) It had no educational

value, had little vocational value, and was unrelated to any scholastic or vocational curriculum. (Compl. at ¶ 37). Plaintiffs know that Class Members performed the same or similar work as they did because they worked alongside their fellow residents and observed the work that they performed. When Plaintiff T.S. worked cleaning buildings, weed-eating, moving rocks, clearing cedar, cleaning camp, moving office supplies, and helping in the campus kitchen (*Id.* at ¶ 55), he did so alongside other residents (T.S. Aff. at ¶ 7). Similarly, when Plaintiff G.A. worked cleaning, landscaping, and performing basic construction tasks (Compl. at ¶ 69), he did so with a team of residents (G.A. Aff. at ¶ 7). Finally, because Plaintiffs and Class Members were enrolled in the same school and followed the same general curriculum (Compl. at ¶ 32), they know that—in addition to having little educational or vocational value—the work performed by Class Members was not related to any course of study (T.S. Aff. at ¶¶ 3, 4, 9; G.A. Aff. at ¶¶ 3, 4, 9). Plaintiffs can thus personally attest that they and Class Members are similarly situated with respect to the work they performed while residing at Pathfinders-RTC.

> 2. *Plaintiffs and Class Members were subject to the same wage violations and policy of nonpayment.*

Pathfinders-RTC's violations of the FLSA were the result of a commonly-applicable policy and scheme: as a matter of course, Pathfinders-RTC required and/or permitted Plaintiffs and Class Members to perform compensable labor and failed to compensate them for that labor. (Compl. ¶¶ 31, 43, 80.) "Work Projects" and other assigned work tasks were a part of Plaintiffs' and Class Members' service plans (*Id.* at ¶ 31). Plaintiffs know that Class Members were not compensated for the work they performed because they spoke about their lack of pay and because they lived together, subject to the same policies and aware of their uniform application. (T.S. Aff. at ¶¶ 4, 13; G.A. Aff. at ¶¶ 4, 13, 14.) Further, Pathfinders-RTC admits that the "Burke Bucks" that were sometimes awarded to residents were not equivalent to cash and seemingly admits that

residents were not paid wages.[1] ("Answer," ECF No. 7, at ¶ 42.)

    3.  *Similarly-situated potential Opt-In Plaintiffs exist.*

Plaintiffs have personal knowledge of other residents of Pathfinders-RTC who performed similar labor subject to the same policy of nonpayment. (T.S. Aff. at ¶¶ 4, 7, 11, 13, 16, 17; G.A. Aff. at ¶¶ 4, 7, 11, 13, 14, 18, 19.)

For the foregoing reasons, Plaintiffs have made the modest factual showing necessary for the Court to issue notice. *See Joaquin*, 219 F. Supp. 3d at 585; *Pedigo*, 666 F. Supp. 2d at 698.

### III.    REQUEST FOR NOTICE TO CLASS MEMBERS

To facilitate the notice process and preserve the rights of those who have not yet been informed of this action, Plaintiffs seek an Order from this Court requiring Defendant to disclose the names, birthdates, last known addresses, all known contact information (including but not limited to Class Members' email addresses, social media accounts, and telephone numbers; as well as identification of parents or guardians, managing conservators, guardians ad litem, attorneys ad litem, Texas Department of Family and Protective Services ("DFPS") caseworkers and caseworker supervisors, Court Appointed Special Advocates ("CASA") volunteers, and the court with jurisdiction over each Class Member), and dates of residency of the above-defined Class Members. Plaintiffs request this information be provided within 21 days from the entry of the Court's Order in usable electronic form in order to reduce any delays in sending out notice.

Plaintiffs ask the Court to approve the proposed Notice and Consent Forms attached to this Motion as Exhibit B and Exhibit C. Plaintiffs seek a 90-day opt-in period measured from the date notice is mailed. Plaintiffs further request authorization to call and/or text Class Members (and/or

---

[1] Pathfinders-RTC's Answer is not clearly worded; paragraph 42 states, in relevant part: "Defendant denies residents engaged in labor and as a result, were not paid wages." Plaintiffs read this as a denial that Plaintiffs "engaged in labor" and an admission that they "were not paid wages."

their parents, current or former guardians, managing conservators, guardians ad litem, attorneys ad litem, DFPS caseworkers, and/or CASA volunteers) to confirm address information and receipt of notice, and to ask CASA programs and state or county governmental agencies including DFPS, the Texas Juvenile Justice Department, and county juvenile probation departments for assistance in contacting minor Class Members who remain in the custody of or under the jurisdiction of the State.

With respect to returning consent forms to Plaintiffs' counsel for filing with the Court, Plaintiffs propose that Opt-In Plaintiffs be allowed to execute the consent form electronically. *See, e.g., Wade v. Furmanite Am., Inc.*, No. 3:17-CV-00169, 2018 U.S. Dist. LEXIS 75624, at *24 (S.D. Tex. 2018) ("[C]ourts routinely permit opt-in members in FLSA collective actions to execute their consent by means of electronic signature."); *Joaquin v. Hinojosa*, 219 F. Supp. 3d 582, 586 (W.D. Tex. 2016) (authorizing electronic consent); *Dyson v. Stuart Petroleum Testers, Inc.,* 308 F.R.D. 510, 517 (W.D. Tex. 2015) (collecting sources and permitting electronic signatures on consent forms).

### A. This Court should allow notice via all reasonable methods in order to reach the FLSA Class.

In collective actions, district courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche*, 493 U.S. at 170–71. The "prime purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945).

The Class Members in this case are children or young adults with severe emotional disorders who were placed in the care of Pathfinders-RTC because they were unsuccessful in outpatient treatment or proved too ill or unruly to be housed in foster care, day treatment programs,

and other nonsecure environments. (Compl. at ¶ 8). Plaintiffs request to employ a set of complementary methods designed to achieve a more effective distribution of the notice to this population than would be possible with mail alone. Plaintiffs request that the Notice and Consent Forms attached hereto as Exhibit B be disseminated via mail; email; Facebook post and/or message, text message, WhatsApp message, and/or messaging through other web-based platforms; and distribution through CASA programs and DFPS. Plaintiffs further request that the Notice Form attached hereto as Exhibit C be posted on the Pathfinders-RTC campus in areas readily and routinely available for review by Class Members. Plaintiffs additionally request that notice be disseminated to Class Members who are current residents of Pathfinders-RTC's Driftwood facility via personal contact with their parents or guardians, managing conservators, guardians ad litem, attorneys ad litem, DFPS caseworkers, and/or CASA volunteers, and that such contact regarding the lawsuit shall be free from monitoring by Pathfinders-RTC staff.

Little precedent exists related to notice for minors and young adults who have been placed in the care of the State. However, in other contexts, Courts have recognized that alternative methods of notice should be used when the targeted audience consists of individuals who change residences frequently, as "[u]nder such circumstances, mail to a last known address will likely fail to reach many of the intended recipients." *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. CIV.A. 11-2777, 2012 WL 5986467, at *1 (E.D. La. Nov. 29, 2012) (approving FLSA notice by radio, newspaper, internet, and workplace/housing posting).

**B. Plaintiffs' requested methods of notice are well established.**

Courts in this District routinely authorize notice by email in addition to mail. *See e.g., Hobbs v. Petroplex Pipe & Constr., Inc.*, MO:17-CV-00030-DC, 2017 WL 10676595, at *4 (W.D. Tex. Mar. 31, 2017) (approving notice by email and stating that "[s]ending of notice in FLSA

proceedings via email is an appropriate method of distribution"); *Parrish v. Premier Directional Drilling, L.P.*, SA-16-CA-00417-DAE, 2016 WL 8673862, at *6 (W.D. Tex. Oct. 14, 2016), *report and recommendation adopted*, 5:16-CV-417-DAE, 2016 WL 8673863 (W.D. Tex. Nov. 7, 2016) (ordering that notice be sent via email and requiring Defendant's production of email addresses and phone numbers). Likewise, with the prevalence of social media, courts regularly allow notice via Facebook and other social media sites. *See, e.g.*, *Yair Granados v. Hinojosa*, 219 F. Supp. 3d 582, 586 (W.D. Tex. 2016) (approving notice via mail, email, Facebook, and publication by radio); *Pacheco v. Aldeeb*, 5:14-CV-121-DAE, 2015 WL 1509570, at *8 (W.D. Tex. Mar. 31, 2015) (approving notice by first-class mail, email, Facebook message, and posting in defendants' restaurants); *Woods v. Vector Mktg. Corp.*, C-14-0264 EMC, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16, 2015) (finding Facebook "a particularly useful form of ensuring actual notice"); *Mark v. Gawker Media LLC*, 13-CV-4347 AJN, 2014 WL 5557489, at *4 (S.D.N.Y. Nov. 3, 2014) (approving notice via social media sites, including Facebook, LinkedIn, and Twitter).

Additionally, courts in the Fifth Circuit have found that using text messages to provide notice is "entirely appropriate." *Vega v. Point Sec., LLC*, No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105, at *12 (W.D. Tex. Sep. 13, 2017); *see also, e.g.*, *Mahrous v. LKM Enterprises, LLC*, No. CV 16-10141, 2017 U.S. Dist. LEXIS 97918, 2017 WL 2730886, at *4 (E.D. La. June 26, 2017) (collecting cases); *Butler v. TFS Oilfield Servs.*, LLC, No. SA-16-CV-1150-FB, 2017 U.S. Dist. LEXIS 218126, 2017 WL 7052879, at *7 (W.D. Tex. Sept. 26, 2017).

Posting notice in the workplace is a "simple and effective way of ensuring that notice reaches all of the putative class members currently employed by [the defendant]" and "not unduly burdensome." *Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *5

(W.D. Tex. Apr. 16, 2015). Therefore, courts routinely order defendants to post notice of collective actions in the workplace. *See, e.g.*, *Pacheco*, 2015 WL 1509570, at *8; *Alverson v. BL Rest. Operations LLC, 516CV00849OLGRBF, 2018 WL 1324952*, at *2 (W.D. Tex. Mar. 12, 2018) (approving notice by direct mail, email, posting notice at defendants business locations); *Harris v. Broncs Inc.*, MO:16-CV-00302-RAJ, 2017 WL 2999701, at *5 (W.D. Tex. Feb. 7, 2017) (permitting notice to be posted at each of defendant's offices where other government-required notices are posted, noting that "[c]ourts have approved physical posting as an appropriate form of notice in FLSA actions"); *Ramos v. Capitan Corp., MO:16-CV-00075-RAJ, 2016 WL 8674617*, at *6 (W.D. Tex. May 18, 2016) (approving notice by posting in defendant's workplace over defendant's objections that such posting would be punitive). And posting notice in a defendant's facilities, particularly housing facilities, is especially appropriate where, as here, potential opt-in plaintiffs living in defendant's facilities might not have access to radio, newspaper, internet, or even mail or email. *Baricuatro*, 2012 WL 5986467, at *1.

Finally, courts have noted that personal contact with potential class members can be an instrumental method to disseminate notice to otherwise difficult to reach class members. *See, e.g.*, *Rivera v. Brickman Grp., Ltd.*, Civil Action No. 05-1518, 2006 U.S. Dist. LEXIS 10210, at *5–7 (E.D. Pa. 2006) (permitting plaintiffs' nonprofit attorneys to personally contact putative class members where, under the circumstances, such contact "appears to be the best way to get accurate, timely information about this action to putative class members"); *Montelongo v. Meese*, 803 F.2d 1341, 1352 (5th Cir. 1986) ("[g]iven the mobile, semi-literate character of the class," personal contact was appropriate); *Neizil v. Williams,* 1983 WL 1983 (M.D. Fla. 1983) (approving consents obtained through direct contacts as "the most efficient means of rendering free legal assistance to indigents in an FLSA action"); *Aguirre v. Bustos,* 89 F.R.D. 645, 649 (D. N.M. 1981) (approving

Rule 23 notice to class of migrant workers through mail and "personal contact"); *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 619 (S.D. Tex. 1979) (approving consents obtained through direct contact by legal aid attorneys).

## IV.  CONCLUSION

Plaintiffs have presented detailed allegations identifying an improper scheme that has denied compensation to them and to other individuals who performed similar work under the same policies. Because Plaintiffs have met their burden for conditional certification under the FLSA, the Court should enforce the collective action provisions of the statute, grant Plaintiffs' Motion for Notice to FLSA Class Members and for Conditional Certification as an FLSA Collective Action, and enter an Order with the terms set forth in Plaintiffs' Proposed Order.

*/s/ Rebecca Eisenbrey*
Rebecca C. Eisenbrey
State Bar No. 24097646
reisenbrey@equaljusticecenter.org
Anna Bocchini
State Bar No. 24057410
abocchini@equaljusticecenter.org
EQUAL JUSTICE CENTER
510 S. Congress Ave., Suite 206
(512) 474-0007 ext. 132

Ted Evans
State Bar No. 24099351
tevans@disabilityrightstx.org
DISABILITY RIGHTS TEXAS
6800 Park Ten Blvd., Suite 208-N
San Antonio, 78213
(832) 681-8224

Peter Hofer
State Bar No. 09777275
phofer@drtx.org
DISABILITY RIGHTS TEXAS
2222 West Braker Lane

Austin, Texas 78758<br>
(512) 454-4816

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF CONFERENCE

I hereby certify that on April 24, I emailed this Motion, the proposed notice forms, and the Proposed Order to Roy E. Matthews, counsel for the Defendant, and asked whether Defendants planned to oppose the Motion. Mr. Matthews responded to my email but did not provide Defendants' position on the Motion. On April 28 and again on May 5, I sent emails to Mr. Matthews asking whether Defendants had decided whether to oppose the Motion. On May 5, Mr. Matthews wrote to apologize for the delay and stated that he would have an answer by May 8. The evening of May 8, I sent an emailing asking for an update. On May 12, I informed Mr. Matthews that if I did not receive a response by the end of the day I would file the Motion. Mr. Matthews responded immediately, explaining that he had not received a response from Defendants.

/s/   Rebecca Eisenbrey

### CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/   Rebecca Eisenbrey