IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| T.S., by and through his next friend, | § | |
| N.O.; and G.A.; | § | |
| *individually and on behalf of all others* | § | |
| *similarly situated*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | CASE NO. 1:19-cv-809-RP |
| v. | § | |
| | § | |
| The Burke Foundation | § | |
| d/b/a Burke Center for Youth, | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFFS' OPPOSED MOTION TO COMPEL WRITTEN DISCOVERY

Plaintiffs invoke Federal Rule of Civil Procedure 37(a)(3)(B)(iii)-(iv) to compel interrogatory answers and document production from Defendant, and in support would respectfully show the following:

### STATEMENT OF FACTS

Plaintiffs are former residents of Pathfinders Ranch, a residential treatment center ("RTC") for boys aged 11 to 18 operated by Defendant The Burke Foundation d/b/a Burke Center for Youth (hereinafter "Pathfinders-RTC"). On August 15, 2019, they filed suit on behalf of themselves and all others similarly-situated, seeking redress for Pathfinders-RTC's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") and the Texas common law theories of quantum meruit, unjust enrichment, and money had and received. Plaintiffs allege that they and other current and former residents of Pathfinders-RTC—all of whom were children with severe emotional disorders—were regularly required and/or permitted by Pathfinders-RTC to perform hours of unskilled manual labor for non-chore "Work Projects" and other work assignments without any monetary compensation.

Plaintiffs bring their FLSA claims as an "opt-in" collective action, and their Texas common law claims as an "opt-out" class action under Federal Rule of Civil Procedure 23. Plaintiffs filed their motion for conditional certification as an FLSA collective action and for notice to a proposed "FLSA Class" on May 13, 2020 (Doc. 22).

Plaintiffs served their first written discovery requests on June 18, 2020, which are attached as Exhibit 1. Defendant sought a series of extensions, and served initial, partial responses on August 3, 2020. A month later, Defendant served its First Supplemental Responses to Plaintiffs' First Discovery Requests, which are attached as Exhibit 2. On October 7, 2020, Plaintiffs sent Defendant a detailed letter (attached as Exhibit 3), summarizing Plaintiffs' position that Defendant's responses were pervasively muddled by boilerplate objections, and that Defendant had deprived Plaintiffs of relevant information and documents central to their claims. On November 2, the parties conferred about Plaintiffs' concerns. Defendant's counsel indicated that Defendant was willing to supplement and amend certain responses by November 24, but would likely stand on some of its objections absent a court order. (See Plaintiffs' counsel's emailed summary, attached as Ex. 5.)

On December 7, 2020, Defendant served supplemental responses (attached as Exhibit 4) which largely replicated the previous iteration. The responses stated that a modest amount of additional supplementation was still forthcoming. (*Id.* at 9, Interrogatory No. 10 (". . . Defendant will supplement this Interrogatory."); 11, Request for Production No. 1 ("Defendant will supplement this response.")). However, Plaintiffs received nothing further. On January 11, 2021, the undersigned sent Defendant's counsel an email seeking clarification as to whether Defendant had exhausted its willingness to supplement its responses without judicial intervention. (Ex. 5, requesting clarification by January 13 and supplementation by January 18.) Defendant's counsel did not respond.

## <u>ARGUMENT</u>

Under Rule 37(a)(3)(B), a party may move to compel disclosure where the opposing party has failed to answer an interrogatory or to produce documents. Evasive or incomplete responses must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4).

1. **Defendant's unverified responses include inappropriate general objections and ineffective assertions of privilege.**

Defendant did not verify its interrogatory responses as required by Federal Rule of Civil Procedure 33(b)(3).[1] Defendant opened its responses by enumerating certain general objections it sought to apply globally to its responses "to the extent" Plaintiffs' requests covered information equally available to Plaintiffs or protected by attorney-client privilege or work-product immunity, or sought to impose discovery obligations exceeding the scope of the Federal Rules of Civil Procedure. (Ex. 4 at 4.) "[T]he practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery has been found ineffective to preserve the objection." *Gonzalez v. Volkswagen Grp. of Am., Inc.*, No. A-14-CV-574-LY-ML, 2015 U.S. Dist. LEXIS 114376, at *4-6 (W.D. Tex. 2015) (internal quotations omitted).

Similarly, when Defendant objected on the basis of privilege or attorney work-product in response to specific requests—including **Requests for Production 2, 3, and 17**—in violation of FED. R. CIV. P. 26(b)(5)(A)(ii) it uniformly failed to provide the required details to allow Plaintiffs a fair opportunity to understand whether any material had been withheld pursuant to the assertion, and, if so, to evaluate whether the assertion was proper. (Ex. 2 at 10, 15.)

The Court should overrule Defendant's General Objections, and order Defendant to verify its interrogatory responses and make the privilege disclosures required by Rule 26(b)(5) for any

---

[1] In its response to Interrogatory No. 1, Defendant stated that "Steve Fournier, Executive Director of the Burke Center for Youth, confirmed and verified Defendant's answers and responses," but no verification was attached or otherwise produced. (Ex. 4 at 6.)

documents withheld on the basis of its privilege and attorney work-product objections.

## 2. __Defendant obscured the scope of its responses with boilerplate objections.__

Defendant prefaced the majority of its responses with bare, unspecific objections including averring that requests were "overbroad," "not reasonably limited in time or scope," "assumes facts not in evidence," "harassing," and "seeks information that is neither relevant nor proportional to the needs of this case." Such boilerplate objections appear in response to **Interrogatories 2, 3, 6, 8, 11, and 12**, and **Requests for Production 2, 3, 4, 5, 6, 7, 10, 13, 14, 16, and 17**. (Ex. 4 at 6-11; Ex. 2 at 9-15.) "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable . . . by submitting affidavits or offering evidence revealing the nature of the burden. Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Sell v. Universal Surveillance Sys., LLC*, No. A-16-CV-660-RP-ML, 2017 U.S. Dist. LEXIS 126457, at *3-4 (W.D. Tex. 2017) (internal citations and quotations omitted).

Defendant also repeatedly failed to specify whether it was withholding materials based on the objections raised. Specifically, in a number of cases Defendant immediately followed its objections with the vague phrase "subject to and without waiving the foregoing objections," then provided some information. Defendant failed to specify whether it was, in fact, withholding information or documents on the basis of the objections raised in its responses to **Interrogatories 2, 3, 6, 8, 11, and 12**, and **Requests for Production  4, 5, 6, 7, 10, 13, 14, and 16**. (Ex. 4 at 6-11; Ex. 2 at 9-15.) Rule 34(b)(2)(C) clearly states, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Vaguely qualifying discovery responses as "subject to" objections "is manifestly confusing at best and misleading at worst. The responding party has the burden of responding to the requests to the extent the requests are not objectionable and must explain the extent to which such request is overbroad, irrelevant, unduly

burdensome, or otherwise objectionable so that both the requesting party and the court can determine the scope of what has been produced and what may remain to be produced if such objections are overruled." *Blair v. Pride Indus.*, No. EP-14-CV-00183-DCG-RFC, 2015 U.S. Dist. LEXIS 178050, at *1 (W.D. Tex. 2015) (Castaneda, M.J.) (internal citations omitted).

The Court should overrule Defendants' objections to the above-enumerated requests and order Defendant to produce any documents or information withheld in reliance on the objections. In the alternative, to the extent the Court finds that any such objections were sufficiently supported by Defendant, the Court should order Defendant to clarify what, if any, responsive information is being withheld pursuant to the objections lodged in response to Interrogatories 2, 3, 6, 8, 11, and 12, and Requests for Production 4, 5, 6, 7, 10, 13, 14, and 16.

### 3. <u>Defendant unjustifiably restricted its responses to information relating directly to the named Plaintiffs and their years of residency at Pathfinders-RTC.</u>

Plaintiffs bring their Texas common law theories of quantum meruit, unjust enrichment, and money had and received as a class action under Federal Rule of Civil Procedure 23. In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court "raised the bar that plaintiffs must clear in order to qualify for class certification." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 298 (S.D.N.Y. 2012). "*Dukes* illustrates the need to develop the record fully before a class motion is considered." *Id.* at 298. Notwithstanding this standard and the Court's decision that discovery should not be bifurcated in this action[2], Defendant maintains its position that Plaintiffs

---

[2] At the outset of this case, Defendant took the position that discovery should be bifurcated into two phases, with pre-certification discovery "relating to the named Plaintiffs," and post-certification discovery—if a class is eventually certified—constituting "a second phase of class-related discovery." (Joint 26(f) Report, Doc. 9 at 3). Plaintiffs argued against limiting the subject matter of discovery or conducting it in phases, noting "that because of the 'rigorous analysis' required by a district court considering a Rule 23 motion, courts across the country have been 'reluctant to bifurcate class-related discovery from discovery on the merits' where, as here, the issues overlap." *Id.* at 2-3 (citing *Chen-Oster*, 285 F.R.D. at 299–300). The parties submitted a

are not entitled to class-wide discovery. Plaintiffs cannot develop the record needed to move for certification of their common-law claims under Rule 23 because Defendant refuses to furnish *any* information or documents regarding similarly-situated potential class members, and has restricted certain responses to the years of the named Plaintiffs' residence at Pathfinders-RTC.[3]

Plaintiffs' **Interrogatory No. 2 and Request for Production No. 5** sought identification of each Resident who participated in any Work Project at Pathfinders-RTC at any time during the "Relevant Period,"[4] and production of certain enumerated resident files for all such Residents identified. (Ex. 1 at 4, 6.)  Evidence of the identities and personal records of other residents who participated in Work Projects during the entire relevant period is germane, non-privileged, and

---

proposed scheduling order with two alternatives: Plaintiffs sought completion of "all discovery" on or before the initially-proposed deadline of September 30, 2020, whereas Defendant sought to have the deadline relate only to completion of "pre-certification discovery." (Joint Proposed Scheduling Order, Doc. 10 at ¶ 6. a.-b.) During the initial pretrial conference, the parties argued their respective positions on conducting discovery in phases, and the Court subsequently issued Plaintiffs' version of the scheduling order. (See original Scheduling Order, Doc. 14 at ¶ 6 (the deadlines in this order were subsequently extended; see Doc. 33).)

[3] This information is not solely relevant to Rule 23 class certification. These individuals are witnesses as well as putative class members, and Defendant's policies, procedures, and practices are relevant beyond the extent to which they were directly experienced by the named Plaintiffs. *E.g. Villareal v. San Antonio Extended Med. Care, Inc.*, No. 15-cv-155, 2015 WL 12748640 at *5 (W.D. Tex. July 15, 2015) (Mathy, M.J.) (Identities and employment records of non-plaintiff employees within the scope of discovery in FLSA action)  Evidence outside of the years of the named Plaintiffs' residence is also relevant since Plaintiffs seek injunctive relief for ongoing violations (Doc. 19 at 17, ¶ 107). See *Perez v. Blue Mountain Farms*, No. 2:13-CV-5081-RMP, 2015 WL 11112413, at *4 (E.D. Wash. Sept. 28, 2015).

[4] Plaintiffs' discovery requests defined the "Relevant Period" as "the entire time period from August 15, 2008 to the time of trial," clarifying in a footnote that this is period represents the time covered by the longest limitations period applicable to the action. (Ex. 1 at 3.)[4] The quantum meruit claims are subject to a four-year limitations period. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004; See also, e.g. *Quigley v. Bennett*, 256 S.W.3d 356, 361 (Tex. App.—San Antonio 2008). Pursuant to Section 16.001 of the Texas Civil Practice and Remedies Code, the four-year statute of limitations for Plaintiffs' and class members' state-law claims did not begin to run until class members turned 18.

*Plaintiffs' Motion to Compel Written Discovery*                                              6

crucial to Plaintiff's ability to develop the record for Rule 23 certification, and this information and documentation is exclusively within Defendant's control. District courts commonly order discovery of putative class members' identifying information in Rule 23 cases, holding that the information's relevance and proportionality to the plaintiffs' certification burden outweighs putative class members' privacy interests.[5]

In addition to the unspecific objections addressed above, in response to Interrogatory No. 2 Defendant also claimed it is not required to provide confidential information about minors. (Ex. 4 at 6.) Plaintiffs offered to enter into an agreed protective order to address the privacy concerns. (Ex. 3 at 5.) Subject to its objections, Defendant stated, "this list is not available as work projects were voluntary and not planned events," and referred Plaintiffs to a list of current and former Pathfinders-RTC employees who "may have supervised or implemented "Work Projects" during the Relevant Period"—all of whom Defendant's lead counsel Bob Bragalone claims to represent. (*Id*.). Presumably, Defendant's agents can readily recollect extemporaneously or through documents which, Residents had *any* Work Project participation[6] within the relevant period—and

---

[5] *See e.g. Mondragon v. Scott Farms, Inc.*, 329 F.R.D. 533, 545 (E.D.N.C. 2019) (identities of a putative class of similarly-situated workers must be disclosed in discovery for plaintiffs to meet their burden under Rule 23 to show numerosity, commonality, and typicality of claims). *Artis v. Deere & Co.*, 276 F.R.D. 348 (N.D. Cal. 2011) ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."); *Doyon v. Rite Aid Corp.*, 279 F.R.D. 43, 50 (D. Me. 2011) ("Plaintiffs generally have a right to contact members of a putative class."); *Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-75, 2013 WL 2444700, at *3 (N.D.W. Va. June 5, 2013) ("Defendants must disclose the names and contact information of former employees, but the protective order in place should sufficiently address any privacy concerns."); *Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 WL 8609402, at *8 (D. Or. May 9, 2011).

[6] Indeed, Pathfinders-RTC's Executive Director Steve Fournier has sworn that Plaintiffs' work project volume (which he alleges was lower than average compared to other residents) was "well known among the staff at the Burke Center," and that he was able to glean information about their Work Project participation "based on my personal recollection, discussions with staff who

---

*Plaintiffs' Motion to Compel Written Discovery*                                                          7

Defendant's counsel should have ready access to all of Defendant's current and former staff members if he represents them. The named Plaintiffs' records reveal that Work Projects occurred on a weekly and sometimes daily basis, and that Defendant at least partially kept track[7] of when each Residents' Work project Participation (See illustrative sample attached as Exhibit 6, which also shows that Defendant generated at least some records electronically).

In response to Request for Production No. 5, Defendant also claims that the request is an undue burden since, "as resident files are not stored electronically and due to the volume of paperwork, Defendant would incur an unreasonable cost and expense of scanning each page of ever[y] resident['s] file in response to this Request." Defendant provided no support for the proposition that this would in fact be unreasonably costly, and Plaintiffs communicated their willingness to inspect and copy the physical documents at their own expense. Additionally, it remains unclear whether electronically-stored information exists. As noted above, highly-relevant documents concerning work project participation were generated electronically. In the parties' joint Rule 26(f) report, Defendant stated that it anticipated "the exchange of limited electronic-based documents and information limited to information relating to Plaintiffs, Plaintiff[s'] service or treatment plans, participation in work projects and Defendant's points and 'Burke Bucks' system." (Doc. 9 at 4, ¶ 9. c.).

Defendant unilaterally and without justification curtailed the Relevant Period in response to **Request for Production No. 16** (seeking Defendant's Cost Reports from each year of the Relevant Period) (Ex. 2 at 15), and **Interrogatory No. 9** (seeking identification of any non-

---

personally interacted with Plaintiffs, and review of each Plaintiff's personal file." (Doc. 24-1 at 3, ¶ 10).

[7] Such information is primarily found in documents known as "Behavior Reports," including but not limited to daily progress logs, weekly progress logs, monthly logs, and points and/or "extra points" logs.

employee Persons who, at any time during the Relevant Period, Defendant compensated to perform or furnish labor for the maintenance, upkeep, and/or improvement of Pathfinders-RTC's facilities, buildings, equipment, animals, and/or land) (Ex. 4 at 8-9; See also production attached as Ex. 7[8]).

The Court should order Defendant to fully supplement its responses to the above-described requests.

### 4.  <u>Defendant failed to sufficiently identify witnesses.</u>

**Interrogatory No. 6** asked for identification of those individuals involved in the development, implementation, and supervision of Work Projects, including "providing a general description of each Person's involvement with Work Projects and the date range of their involvement with Work Projects during the Relevant Period." (Ex. 1 at 4). "Subject to" boilerplate objections, Defendant referred Plaintiffs to an employee list where it highlighted names of 37 employees "***most likely to have*** supervised or implemented "Work Projects," all of whom Mr. Bragalone claims to represent. (Ex. 4 at 7; See also responsive list attached as Exhibit 8 (emphasis added)). Defendant should be able identify which potential witnesses *actually* developed, supervised, or implemented Work Projects and provide a general description for each witness's involvement—particularly if its counsel represent all of those individuals.

**Interrogatory No. 10** sought identification of individuals responsible for awarding Burke Bucks, points, or similar rewards to Residents during the Relevant Period. Defendant stated it would supplement its response to identify UT Charter School Teachers, but has not (Ex. 2 at 8; Ex. 4 at 9).

**Interrogatory No. 11** sought information about complaints and investigations against

---

[8] (showing the QuickBooks reports produced were incomplete—they included full information only for 8/3/16-1/16/19, and additional partial information was supplied for the period spanning 1/17/19-9/5/19. Nothing was provided prior to August 2016 or after September 2019).

Defendant concerning failure to pay Residents for work performed at Pathfinders-RTC. (Ex. 1 at 5.) Plaintiffs are aware of at least two responsive investigations by the Texas Health and Human Services, Child Care Licensing Division of the Health and Human Services Commission: Investigation # 2569717 (started on or around 9/24/2019) and Inspection ID 3494412 and/or Inspection Numbers 2165215 and/or 2136082 (started on or around 9/15/2015). Apart from claiming that T.S. initiated the 2019 complaint, Defendant did not identify the people involved with these claims and investigations, who are central witnesses to the scope of the allegations raised, Burke's response, and the reasoning behind the conclusions (Ex. 4 at 9-10)[9].

Defendant should be ordered to supplement its responses to fully identify all witnesses within the scope of these requests.

**5.  Defendant has not produced a relevant insurance agreement.**

**Request for Production No. 1** sought production of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Ex. 1 at 6). Defendant stated that it will supplement to provide a responsive agreement, but has not. (Ex. 4 at 11.)

**6.  Defendant has not produced documents concerning Work Project formation and implementation.**

**Request for Production No. 8** sought all documents concerning Defendant's formation and implementation of Work Projects during the Relevant Period, including but not limited to documents concerning the type of work performed on Work Projects, the method of performing the work, the supervision of the work, the assignment or offering of work to Residents, management of Residents performing the work, and logging and/or tracking time spent by on Work

---

[9] Defendant appears to have inadvertently pasted Interrogatory No. 12 between the question and amended answer for Interrogatory No. 11.

Projects. Defendant did not object and stated it "does not have documents responsive to this Request." As noted above, Plaintiffs are aware of at least some responsive documents. Work Project participation, substance, and supervision was at least partially logged by Defendant (e.g. Ex. 6). Defendant should be ordered to produce all responsive documents.

   7. **Defendant has refused to produce any communications regarding relevant categories of information.**

   **Interrogatory No. 17** sought all communications, inter-office memoranda, meeting notes and/or minutes, presentations, recordings, text messages, emails, or other documents generated during the Relevant Period concerning this lawsuit, payment and/or nonpayment of Residents for work performed while at Pathfinders-RTC; any related allegations, investigations, or complaints other than this lawsuit; and/or Work Project participation by Plaintiffs and/or those Residents whose identities were sought through Interrogatory No. 2.

   Defendant produced nothing in response to these tailored categories of relevant information, relying on boilerplate objections and insufficient assertions of privilege. Defendant should be ordered to supplement with a full response. To the extent any of Plaintiffs' enumerated categories could be construed as overly broad, Defendant still had a duty to respond to the extent they covered non-objectionable records.

**CONCLUSION**

   For the foregoing reasons, Plaintiffs respectfully ask the Court to enter the proposed order attached to this motion, and order all appropriate relief as provided in Rule 37(a)(5) and Rule 37(c)(1).

   Respectfully Submitted,

   */s/ Anna Bocchini*

   Rebecca C. Eisenbrey
   State Bar No. 24097646

*Plaintiffs' Motion to Compel Written Discovery*                    11

reisenbrey@equaljusticecenter.org
Anna Bocchini
State Bar No. 24057410
abocchini@equaljusticecenter.org
EQUAL JUSTICE CENTER
314 E Highland Mall Blvd, Suite 401
Austin, TX 78752
 (512) 474-0007 ext. 132

Ted Evans
State Bar No. 24099351
tevans@disabilityrightstx.org
DISABILITY RIGHTS TEXAS
1500 McGowen, Suite 100
Houston, Texas 77004
(832) 681-8224

Peter Hofer
State Bar No. 09777275
phofer@drtx.org
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that, as outlined on pages 2-3 above, Plaintiff's counsel conferred with Defendants' counsel over the course of several weeks via a detailed letter, a phone conference, and subsequent email follow-up in a good-faith effort to avoid the need for judicial intervention with respect to these discovery disputes.

*/s/   Anna Bocchini*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/   Anna Bocchini*