IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| T.S., by and through his next friend, N.O.; and G.A.; *individually and on behalf of all others similarly situated*, | § § § § § § § § § § § § § § | |
| *Plaintiffs*, | | |
| v. | | CASE NO. 1:19-cv-809-RP |
| The Burke Foundation d/b/a Burke Center for Youth, | | |
| *Defendant*. | | |

**PLAINTIFFS' BRIEF REGARDING SUPPLEMENTAL AUTHORITY**

In compliance with this Court's January 14, 2021 Order (Doc. 38), Plaintiffs T.S. and G.A. respectfully submit this Brief analyzing *Swales et al. v. KLLM Transport Services, L.L.C.* and *Jowers v. KLLM Transport Services, L.L.C.*, --- F.3d ---, No. 19-60847 (5th Cir. 2021) ("*KLLM*"), and its impact on the present case.

    **I.**    *KLLM* **Refocuses the District Court's Pre-Notice Inquiry on the "Similarly Situated" Requirement.**

Prior to *KLLM*, district courts within the Fifth Circuit used the two-step process laid out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), to determine whether named plaintiffs and putative class members are similarly situated such that an FLSA collective action should be certified under 29 U.S.C. § 216(b). While the Fifth Circuit had reviewed decisions applying *Lusardi*, *see, e.g.*, *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (reviewing district court's first-step conditional certification decision); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (reviewing district court's decision to decertify a collective action at the second stage of the *Lusardi* analysis); *Sandoz v. Cingular Wireless L.L.C.*,

553 F.3d 913, 915 n.2 (5th Cir. 2008) (describing the "typical[]" two-step *Lusardi* process), it had avoided expressly adopting the *Lusardi* approach, *JPMorgan*, 916 F.3d at 500 n.9.

In *KLLM*, the Court expressly rejected the two-step, conditional-certification approach. Slip Op. at 13. In the Fifth Circuit's view, *Lusardi* permits district courts to lose sight of § 216(b)'s requirement that members of a collective action be "similarly situated." *Id.* at 15. Specifically, the Court blamed *Lusardi* for the error committed by the district court in *KLLM* and, before that, the district court in *JPMorgan*: the refusal to consider evidence of "potentially dispositive, threshold matters" when deciding whether to authorize notice of the collective action. *Id*. at 17. To avoid such error in the future, the Court announced a new rule. Under *KLLM*, "[a] district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id*. Once it has done so, the district court retains great discretion: it can find similarity based on "the pleadings and only preliminary discovery," or it can order some discovery to determine whether notice is warranted. *Id.* at 18.

*KLLM* did not change the standard by which district courts determine whether individuals are "similarly situated," a standard that is less stringent than Rule 23's requirements of commonality or predominance. *See, e.g.*, *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584–85 (6th Cir. 2009) (rejecting district court's "Rule 23-type analysis" that found that "plaintiffs were not similarly situated because individualized questions predominated" and finding the class members to be similarly situated "because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct"); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 521 (2d Cir. 2020) (holding that district court improperly conflated § 216(b) with Rule 23, and that whether plaintiffs are

"similarly situated" for the purposes of an FLSA collective action depends on whether they "share one or more similar questions of law or fact material to the disposition of their FLSA claims."). "District courts in the Fifth Circuit have repeatedly stated that plaintiffs need only be *similarly* situated, not *identically* situated." *Espinosa v. Stevens Tanker Div., LLC*, Civil Action No. SA-15-CV-879-XR, 2017 U.S. Dist. LEXIS 64188, at *9 (W.D. Tex. 2017) (emphasis original). To undermine the sufficiency of workers' similarity, "distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226–27 (5th Cir. 2011). (noting that, "[i]f one zooms in close enough on anything, differences will abound; . . . [b]ut plaintiffs' claims need to be considered at a higher level of abstraction" (internal quotation omitted)); *see also, e.g. Clark*, 44 F. Supp. 3d at 688 ("[s]alient" and "legitimate" distinctions between class members do not preclude collective adjudication unless the employer can show their materiality to common legal questions).

*KLLM* did not transform § 216(b)'s requirement of *similarity* into one of *identical* facts. *See id.* (referring to "sufficient similarity"); *see also, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016) (noting that, in donning and doffing case, class members were found to be sufficiently similar despite variance in the protective gear each employee wore, which resulted in different amounts of unpaid time and meant that some class members had no claim). Nor did *KLLM* alter the fundamental principle that plaintiffs are not required to prevail on the merits before notice may issue; they are required only to demonstrate that class members will have similar answers to common questions, such that collective adjudication is more efficient. *See* Slip Op. at 18 ("Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits."); *see also Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("The judicial system benefits by efficient resolution in one proceeding of

common issues of law and fact arising from the same alleged [unlawful] activity.") The gravamen of *KLLM* is that, when deciding whether the class has sufficient similarity, a district court may not ignore evidence of fatal dissimilarity on the grounds that it relates to the merits. *See* Slip Op. at 18.

The Court provided illustrative examples. On one end of the spectrum are some donning and doffing cases. *Id*. In such cases, the central legal question is whether preliminary and postliminary activities are compensable. *See, e.g.*, *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222 (5th Cir. 2017) (reviewing donning and doffing claim). Where the pleadings and any additional evidence show that "plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job"—i.e., the same uncompensated activities—a district court can hold that there is sufficient similarity to justify notice. Slip Op. at 19. On the other end of the spectrum are cases, like *KLLM*, in which available evidence shows that plaintiffs would answer the central question—whether drivers were employees or independent contractors—with wildly divergent evidence. *Id*. (discussing "numerous variations" among the relevant factual allegations presented by plaintiffs and opt-ins, including the length of their contracts with KLLM, their profitability, and the amount of control that KLLM exercised over them). Where dissimilar answers to common questions are apparent, the district court cannot plausibly conclude that the class members are similarly situated, and instead must either order further discovery or decline to authorize notice.[1] *See id*. at 19–20.

In *KLLM*, the Fifth Circuit reaffirmed that "the district court has broad, litigation-management discretion" to authorize notice of collective actions under the FLSA. *Id*. at 20.

---

[1] Notably, the Fifth Circuit did not hold that the apparent differences among the drivers' circumstances precluded the issuance of notice in *KLLM*. Instead, it remanded so that the district court could determine, "considering all available evidence," whether the plaintiffs met their burden of establishing similarity. Slip Op. at 20.

*Plaintiffs' Brief Regarding Supplemental Authority*                                             4

Ultimately, the decision does not limit that discretion, but rather confirms its breadth. *KLLM* demands that—contrary to some readings of *Lusardi*—the district court not ignore evidence that potential class members are not similarly situated in order to determine that they are. *See id.* at 20.

## II. The Proposed Class Is Sufficiently Similar to Warrant Issuance of Notice.

On May 13, 2020, Plaintiffs filed their Motion for Notice to Class Members and for Conditional Certification as an FLSA Collective Action. (Doc. 22, "Motion.") After *KLLM*, the Court cannot "conditionally certify" this case as a collective action, and the "lenient notice-stage standard" does not apply. (*See id.* at 4, citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)). Instead, the Court must examine the central issues in the case and determine whether the proposed class is sufficiently similar. Slip Op. at 18–19. As explained in Plaintiffs' Motion, a review of all of the available evidence in this case demonstrates that it is.

### A. Class members will have similar answers to the central questions in this case.

This central question is this case is: Was time spent by residents completing Work Projects compensable under the FLSA? Nothing in the available evidence suggests that class members will answer this question with conflicting evidence. Indeed, Defendant's own pleadings illustrate the similarity of the class member's claims. Defendant contends that all residents completed Work Projects "as volunteers," and thus that no residents are entitled to compensation. (*See* Doc. 24, "Response," at 4.) The FLSA "allows people to freely volunteer time to religious, charitable, civic, humanitarian, or similar nonprofit organizations as a public service." WHD Opinion Letter FLSA2006-18, 2006 WL 1836646, at *1 (June 1, 2006). Whether residents were truly volunteers, and thus not entitled to compensation, is an issue that can be adjudicated on a class-wide basis. For example, Plaintiffs intend to demonstrate that no resident could have offered his services "without contemplation or receipt of compensation" and "freely without coercion or undue

pressure," as the Act requires of bona fide volunteers, *see id.*, because all residents were informed of their rights under 26 Tex. Admin. Code § 748.1101(b)(3)(L) to get paid for any labor performed and all were subject to Defendant's coercive, rewards-based policies. (*See* Doc. 19, "First Amended Complaint," at ¶¶ 29, 41, 90.)

### B. No individualized evidence of "potentially dispositive, threshold matters" exists.

Defendant also alleges that some residents "only participated in observational training Work Projects" and that residents' participation varied because it was allegedly voluntary in nature. (Response at 3). Defendant, however, has not offered any evidence that any residents performed only observational Work Projects. Therefore, Defendant has not rebutted Plaintiffs' evidence that proposed class members did the same type of work, under the same conditions, and were similarly not compensated for it. (*See* First Amended Complaint, ¶ 79; Doc. 22-1, "Plaintiffs' Affidavits," at 1 ¶¶ 7, 11, 4 ¶¶ 7, 11.) Further, if some class members participated in noncompensable activities that were documented as "work projects," or even if some class members performed no compensable tasks—propositions that Defendant again raises with no evidence—these are questions of damages that do not negate the class members' sufficient similarity. *See Bouaphakeo*, 136 S. Ct. at 1050; *Clark v. Centene Co. of Tex., L.P.*, 44 F. Supp. 3d 674, 688 (W.D. Tex. 2014) (individualized "evidence concerning how many overtime hours each Plaintiff worked is relevant only to damages, not liability, and therefore does not [thwart a determination of sufficient similarity]"); *Metcalfe v. Revention, Inc.*, No. 4:10-CV-3515, 2012 U.S. Dist. LEXIS 128250, 2012 WL 3930319, at *6 (S.D. Tex. Sept. 10, 2012) ("Whether individualized determinations are necessary to define the extent of Plaintiffs' damages, if any, does not weigh against efficiently establishing Defendants' class-wide liability."); *Maynor v. Dow Chem. Co.*, 671 F.Supp. 2d 902, 935 (S.D. Tex. 2009) ("The need for individual plaintiffs to

establish the amount of uncompensated time does not defeat [the similarly-situated determination].")

Defendant also raises the statute of limitations as a potentially individualized affirmative defense, arguing that notice should not issue to any resident who cannot opt in within three years of his last work performed. (Response at 7–8.) However, the parties' pleadings set forth uniformly applicable equitable grounds for tolling the FLSA's statute of limitations. All class members were or are emotionally- and learning-disabled children diagnosed by licensed medical professionals with mental health conditions causing severe mental, behavioral, and emotional impairments leading to residential treatment. (*E.g.*, First Amended Complaint at ¶¶ 15, 17, 26, 27, 33; Doc. 7, "Defendant's Answer," at ¶¶ 26, 27, 33.) The Fifth Circuit has acknowledged the possibility that mental illness might justify equitable tolling of remedial employment-law statutes' limitations periods. *Hood v. Sears, Roebuck & Co.*, 168 F.3d 231–33 (5th Cir. 1999) (recognizing possibility that mental illness would support equitable tolling "if the illness . . . prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them"). Class members' mental disabilities coupled with their minority status rendered them uniquely incapable of managing their affairs and understanding and acting upon their legal rights. Whether these class-defining factors rise to the level of extraordinary circumstances justifying equitable tolling is not a question presently before the Court. However, once opt-in plaintiffs are no longer purely hypothetical and are able to move for equitable relief from the statute of limitations, the Court's inquiry will focus on facts that apply class-wide. The limitations defense does not impede a determination of sufficient similarity. *See, e.g., Clark*, 44 F. Supp. 3d at 690; *Escobedo v. Dynasty Insulation, Inc.*, No. EP-08-CV-137-KC, 2009 U.S. Dist. LEXIS 66836, at *25 (W.D. Tex. 2009) (same).

### III.     In the alternative, the Court should authorize limited discovery.

Alternatively, in the event that the Court is not prepared to allow issuance of notice on the basis of the evidence presently before it, the Court should authorize limited discovery targeted at those factual and legal considerations material to determining whether Plaintiffs and potential opt-ins are "similarly situated." *KLLM* at 17. Such discovery should be tailored in breadth, mindful that the substantial benefits of FLSA collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Hoffmann-La Roche*, 493 U.S. at 170.

As outlined above, the central inquiry in this litigation is whether time spent by residents completing Work Projects was compensable under the FLSA. In order to evaluate any assertion by Defendant that distinctions between potential class members could be material to this common legal question, discovery should focus on the nature of class members' Work Project participation, including the scope of the Work Projects; the tasks performed; the frequency of participation; the dates of the work; the duration of the work; the relationship of the Work Projects to any educational, vocational, or therapeutic goals or plans;  explicit or implicit expectations of remuneration related to the work performed; and Defendant's token economy and rewards and disciplinary systems. Such information has already been sought by Plaintiffs as it is also material to the merits of this action as well as their ability to sufficiently develop the record necessary for certification of their state common-law claims under Rule 23. These categories of discovery form a focal point of Plaintiffs' pending Motion to Compel Written Discovery (*See* Doc. 39, "Ps' MTC".)

Plaintiff requests that the Court compel Defendant to respond in full to the following discovery requests (originally propounded on June 18, 2020) within 14 days of the Court's order:

**Plaintiffs' Interrogatory No. 2:** Please identify each Resident who participated in any Work Project at Pathfinders-RTC at any time during the Relevant Period. For the purposes of this interrogatory, in addition to the information listed [Western District of Texas Local Rule CV-26 (b.) (3.)], to "identify" includes providing (to the extent known) each Resident's: birthdate, dates of residency at Pathfinders-RTC, and all known contact information (including but not limited to each Resident's personal contact information, as well as identification of his parents or guardians, managing conservators, guardians ad litem, attorneys ad litem, Texas Department of Family and Protective Services caseworkers and caseworker supervisors, Court Appointed Special Advocates volunteers, and the court with jurisdiction over each Resident).

**Plaintiffs' Interrogatory No. 6:** Please identify all Persons who, at any time during the Relevant Period, were involved in developing Work Projects, implementing Work Projects, assigning or offering Work Project opportunities to Residents, scheduling Work Projects, and/or supervising Residents' participation in Work Projects. For the purposes of this interrogatory, in addition to the information listed in ¶ 7. (a.) of the Definitions above, to "identify" includes providing a general description of each Person's involvement with Work Projects and the date range of their involvement with Work Projects during the Relevant Period.

**Plaintiffs' Request for Production No. 5:**   Please produce your files for each Resident identified in response to Interrogatory No. 2, including but not limited to documents concerning:
a) program intake and admission, transfer or discharge; and Review and Dismissal Committee reports;
b) confirmation of explanation of Child Rights;
c) service plans, treatment objectives, and any related progress reports;
d) education plans, goals, and objectives, including but not limited to Individualized Education Plans, school records, and any related progress reports;
e) vocational plans, training, or services; transition plans; and Preparation for Adult Living and/or life-skills training progress reports and/or logs;
f) behavioral intervention plans; behavior reports, including but not limited to daily progress logs, weekly progress logs, monthly logs, and points and/or "extra points" logs; and any other records concerning points and/or Burke Bucks earned, awarded, spent and/or deducted;
g) participation in Work Projects during the Relevant Period, including dates of participation; time spent in participation; descriptions of the tasks observed or performed; and money, Burke Bukes, points, or other reward or remuneration earned and/or received for participation;
h) money earned during residency at Pathfinders-RTC; Pathfinder Resident Fund Logs, and any other records of money received, deposited, and/or held for each

        Resident; and Off-site employment records;

i) chore work assigned and/or performed during residency at Pathfinders-RTC during the Relevant Period, including dates of participation, description of tasks performed; and time spent on chore work;

j) discipline records, including but not limited to notable behavior and/or incident reports;

k) physical, psychological, and/or or mental health evaluations performed before or during residency at Pathfinders-RTC; mental-health-related prescriptions; and treatment and therapy records and notes.

**Plaintiffs' Request for Production No. 8:**  Please produce all documents concerning Defendants' formation and implementation of Work Projects during the Relevant Period, including but not limited to documents concerning the type of work performed on Work Projects, the method of performing the work, the supervision of the work, the assignment or offering of work to Residents, management of Residents performing the work, and logging and/or tracking time spent by Residents and/or employees on Work Projects.

Prior to the *KLLM* decision, numerous district courts specifically permitted pre-certification discovery of the identities, contact information, and personnel files for putative opt-in class members in FLSA collective actions, despite the leniency of the first stage of the now defunct *Lusardi* process. *See Sedtal v. Genuine Parts Co.*, No. 1:08-CV-413-TH, 2009 U.S. Dist. LEXIS 63261, at *19-20 (E.D. Tex. 2009 (granting motion to compel identities and contact information of collective members based on the remedial purpose of the FLSA and the court's broad discretion under Rule 26); *Velasquez v. WCA Management Company, L.P.*, No. 4:15-CV-02329, 2017 U.S. Dist. LEXIS 60593, at *7 (S.D. Tex. 2017) (S.D. Tex. Apr. 20, 2017) (granting emergency motion to compel list of potential opt-in plaintiffs); *Briones v. Kinder Morgan, Inc.*, CV H-15-2499, 2016 WL 6804862, at *4 (S.D. Tex. Nov. 17, 2016) (ordering discovery of putative class list and contact information prior to FLSA conditional certification and listing cases that permit such discovery); *Burdine v. Covidien, Inc.*, No. 1:10-CV-194, 2011 U.S. Dist. LEXIS 14648 (E.D. Tenn. Feb. 11, 2011) (finding good cause to permit pre-certification discovery of potential plaintiffs' contact information in FLSA case); *Martin v. American Traveler Staffing*

*Professionals, LLC*, No. 08-80461-CIV, 2008 U.S. Dist. LEXIS 94479, at *6, at *2 (S.D. Fla. Sept. 9, 2008) (permitting discovery of all employees or former employees who performed duties similar to those of plaintiff and were compensated in a similar manner); *Miklos v. Golman-Hayden Cos.*, No. 2:99- CV-1279, 2000 U.S. Dist. LEXIS 22352, at *4-6 (S.D. Ohio 2000) (compelling discovery of potential opt-in plaintiffs' names, addresses, and compensation records).

Discovery of potential class members' identities, contact information, and Pathfinders-RTC records is especially vital in this case, as Defendant's records are insufficient to show any relevant distinctions among potential class members' work tasks. "Defendant does not keep a list of all 'Work Projects' performed on the property; rather, Defendant creates Behavioral Reports for each resident, which provides information on the 'Work Project' performed by that specific resident." (Doc. 40, "D's Resp to Ps' MTC" at 6.) Plaintiffs attached an illustrative sample of the information contained in Defendant's "Behavioral Reports" as Exhibit 6 to their motion to compel. (Doc 39-6.) As this sample reveals, Defendant's record-keeping with respect to Work Project scope and duration is an inadequate source from which to glean data to rebut Defendant's assertions of supposed material distinctions between residents' work project participation including alleged variation in tasks performed, scope of the work, duration of the work, and the observational or physical nature of the work. For example, entries related to Work Projects performed from 5/4/2018-5/30/2018 show absolutely no information about the duration of the work on any given day. And, while some entries elaborate more or less on certain qualities of the work performed (e.g., "cleaning the long building," "hard work on brush trailers hot day," "weed-eating around stone school house," "moved rocks from pasture to pit by Eagle Camp"); many entries simply indicate that participation in one or more "Work Project" occurred on a particular day, without any elaboration about the tasks performed (e.g. entries on 5/6/18, 5/27/18, 5/30/18,

7/8/18, 7/10/18, 7/11/18, 7/12/18, and 7/13/18, all stating merely "Work Project"). *Id*. Although residents' Behavioral Report records are fundamentally germane and discoverable class-wide, their incompleteness renders interviews with potential class members essential to comprehending the contours of any individualized issues.

## IV.     Conclusion

As elaborated above, a review of all of the available evidence in this case demonstrates that Plaintiffs' proposed class is sufficiently similar to warrant issuance of notice. Alternatively, if the Court finds that additional evidence is necessary to its determination of sufficient similarity, the Court should authorize limited discovery and compel Defendant to respond in full to Plaintiffs' Interrogatories 2 and 6, and Requests for Production 5 and 8, within 14 days of the Court's Order on Plaintiffs' Motion.

Dated:  January 29, 2021                           Respectfully submitted,

                                                    By:    /s/ Rebecca Eisenbrey
                                                           Rebecca C. Eisenbrey
                                                           Attorney-In-Charge
                                                           State Bar No.: 24097646
                                                           reisenbrey@equaljusticecenter.org
                                                           Anna Bocchini
                                                           Texas State Bar No.
                                                           abocchni@equaljusticecenter.org
                                                           Equal Justice Center
                                                           314 E Highland Mall Blvd, Ste. 401
                                                           Austin, Texas 78752
                                                           Tel (512) 474-0007, ext. 132

                                                           ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record for Plaintiff, certify that on January 29, 2021, a true and correct copy of this Notice was filed and served on counsel for Defendants through the Court's CM/ECF system.

/s/ Rebecca C. Eisenbrey
Rebecca C. Eisenbrey
Attorney for Plaintiffs