IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| T.S., by and through his next friend, P.O., and G.A., *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> THE BURKE FOUNDATION *d/b/a* BURKE CENTER FOR YOUTH, <br><br> Defendant. | § § § § § § § § § § § § § § | 1:19-CV-809-RP |

## ORDER

Before the Court is Plaintiffs T.S., by and through his next friend, P.O., and G.A., individually and on behalf of all others similarly situated (collectively, "Plaintiffs") Motion for Notice to Class Members and Conditional Certification as an FLSA Class Action. (Dkt. 22). Having considered the parties' arguments, the record, and the relevant law, the Court finds that the motion should be granted in part and notice should be issued to proposed class members.

### I. BACKGROUND

This is a Fair Labor Standards Act ("FLSA") action concerning compensation for current and former residents of Defendant Burke Foundation d/b/a Burke Center for Youth's ("Burke") Pathfinders Ranch ("Pathfinder-RTC"), a residential treatment center for minor boys with "severe emotional or mental-health issues." (Am. Compl., Dkt. 19, at 3, 13). Plaintiffs allege that they worked on various work assignments ("Work Projects") and were not paid wages for their work, and that Burke did not maintain complete and accurate records of the work they performed. (*Id.* at 10–11, 14). Plaintiffs sought to certify this action as a collective action under the FLSA. (Mot. Certify,

Dkt. 22, at 1) (citing 29 U.S.C. § 216(b)). To that end, Plaintiffs asked the Court to certify the following class and order that notice be sent to potential class members:

> All current and former residents of Pathfinders-RTC's facility in Driftwood, Texas, who were 21 years old or younger as of August 15, 2019, and who, in addition to their required daily chores, engaged in "Work Projects" and/or work assignments while residing and receiving treatment at Pathfinders-RTC.

(*Id.* at 2). Plaintiffs also asked the Court to order Burke to disclose to Plaintiffs' counsel "the names, birthdates, last known addresses, all known contact information . . . . and dates of residency of the above-defined Class Members" and to approve of notice to class members "via all reasonable methods," including via mail, email, Facebook, text message, Whatsapp, messaging through other web-based platforms, posting on the Pathfinder-RTC campus, and through current residents' "parents or guardians, managing conservators, guardians ad litem, attorneys ad litem, DFPS caseworkers, and/or CASA volunteers." (*Id.* at 6–7). Burke opposed class certification and the proposed notice on several grounds. (*See* Resp. Mot. Certify, Dkt. 24).

While Plaintiffs' motion for class certification was pending before the Court, the Fifth Circuit's decision in *Swales et al. v. KLLM Transport Services, L.L.C*, 2021 WL 98229, at *1 (5th Cir. Jan. 12, 2021) changed the way district courts are to evaluate the issuance of notice in a FLSA collective action. The Court thus ordered the parties to file supplemental briefing on the impact of the Fifth Circuit's decision on the pending motion for class certification. (Order, Dkt. 38). Plaintiffs timely filed their supplemental brief on January 29, 2021. (Pls.' Supp. Brief., Dkt. 41). Burke "inadvertently failed to file its supplemental brief" on time, and requested leave to file its brief on February 3, 2021, which the Court granted. (Def.'s Supp. Brief, Dkt. 42-1).

## II. LEGAL STANDARD

The FLSA permits one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under

this provision, other similarly situated employees "do not become plaintiffs in the action unless and until they consent in writing." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008). "To keep the opt-in process efficient, district courts 'have discretion' to 'facilitat[e] notice to potential plaintiffs.'" *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Prior to the Fifth Circuit's decision in *KLLM*, notice did not issue unless a court conditionally certified the case as a collective action under the first step of the *Lusardi* approach. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010); *but see Swales et al. v. KLLM Transport Services, L.L.C*, 2021 WL 98229, at *1 (5th Cir. Jan. 12, 2021). In *KLLM*, the Fifth Circuit rejected the two-step *Lusardi* approach to conditional class certification, and instructed courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *KLLM*, 2021 WL 98229, at *7.

Next, courts can either find Plaintiffs to be similarly situated based on "the pleadings and only preliminary discovery" and approve notice or order further discovery to determine whether notice is warranted. *Id.* at 8. The Fifth Circuit lamented that in the *Lusardi* approach, many courts failed to consider evidence of "potentially dispositive, threshold matters" on whether plaintiffs were in fact similarly situated when deciding whether to authorize notice to potential plaintiffs. *Id.* at 7. (cautioning district courts to avoid "crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool").

As such, the *KLLM* approach requires this Court to determine whether Plaintiffs' proposed class is sufficiently similarly situated to warrant the issuance of notice to potential class members. *See id.* Plaintiffs nonetheless bear the burden of making a preliminary factual showing that a similarly

situated group of potential plaintiffs exists. *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011). As such, plaintiffs must establish "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir.1995). To determine whether an FLSA plaintiff has met his or her burden, courts often look at "whether potential plaintiffs were identified, . . . whether affidavits of potential plaintiffs were submitted, . . . and whether evidence of a widespread discriminatory plan was submitted." *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (citations omitted). At this stage, the Court must "consider all of the available evidence" and may make determinations on the merits of Plaintiffs' claims as necessary. *KLLM*, 2021 WL 98229 at *8 (5th Cir. Jan. 12, 2021).

Finally, a district court may modify the proposed class definition if it is overly broad. *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005) (recognizing a court's power to "limit the scope" of a proposed FLSA action).

### III. DISCUSSION

Named-plaintiffs T.S. and G.A. were minor residents at the Pathfinder-RTC and allege that they participated in Work Projects for which they were not paid wages. (Am. Compl., Dkt. 19, at 2, 10; T.S. Decl., Dkt. 22-1, at 1; G.A. Decl., Dkt. 22-1, at 4). T.S. and G.A. allege that they were directed by Pathfinder-RTC to complete Work Projects that included "cleaning buildings, weed-eating, moving rocks, clearing cedar, cleaning camp, cooking, helping in the kitchen and cafeteria, and moving office supplies." (T.S. Decl., Dkt. 22-1, at 1; G.A. Decl., Dkt. 22-1, at 4). They further state that these Work Projects did not form part of their "school program, class, or work-training plan" and that they "regularly spent approximately fifteen or more hours per week" on these assignments. (*Id.*). T.S. and G.A. estimate that approximately 20 boys lived at the Pathfinder-RTC at

any given time and that all of them participated in Work Projects at the direction of Pathfinder-RTC. (*Id.* at 2, 5). They state that they and other residents were not compensated for their time spent on Work Projects apart from being occasionally awarded "Burke Bucks," which "could only be used at the Pathfinders-RTC campus store." (*Id.* at 1). Plaintiffs contend that they have satisfied their burden of showing that potential class members are sufficiently similar based on the allegations in their amended complaint and sworn declarations, such that the issuance of notice is warranted. (Dkt. 22, at 4, 6; Dkt. 41, at 12).

Burke opposes Plaintiffs' motion on several bases. First, Burke argues that "plaintiffs are not similarly situated under the FLSA to represent such an ambiguous class" as some Work Projects did not involve physical activity but rather "observational training." (Resp. Mot. Certify, Dkt. 24, at 3–4; Dkt. 42-1, at 2–3). Second, Burke also contends that Plaintiffs chose to participate in "Work Projects as volunteers and at their discretion" and thus are not entitled to compensation under the FLSA. (Dkt. 24, at 4; Dkt. 42-1, at 2). Burke proposes limiting the proposed class to Pathfinder-RTC residents who "participated on Work Projects for approximately fifteen (15) hours per week on projects requiring physical activity compensable under the FLSA within three years of a court-approved notice." (Dkt. 24, at 4; Dkt. 42-1, at 3). The Court will address each issue in turn within the new framework announced by the Fifth Circuit.

    **1. What Facts Will Be Material to Determining if Plaintiffs are Similarly Situated?**

First, the Court must determine what facts and legal considerations will be material to determining whether the proposed group of "employees" is "similarly situated." *KLLM*, 2021 WL 98229, at *7. Burke contends that the number of hours spent on the Work Projects and the nature of those Work Projects will be material in determining whether proposed plaintiffs are "similarly situated." (Dkt. 42-1, at 2–3). Specifically, Burke argues that because "not all residents who

5

participated in a Work Project were performing physical activity," Plaintiffs' proposed class includes RTC-Pathfinder residents who are "not entitled to compensation under the FLSA." (Dkt. 42-1, at 1–2). Yet, Burke does not cite, and the Court is not aware of, any authority supporting Burke's contention that all prospective plaintiffs must have engaged in physical labor to be protected under the FLSA. Burke also argues that proposed plaintiffs should be limited to only those who participated in Work Projects "for approximately the same amount of time each week," and as such discovery is needed to determine the hours spent on and type of task involved in each Work Project. (*Id.* at 3).

However, Plaintiffs correctly point out that questions regarding the number of hours worked "are questions of damages that do not negate the class members' sufficient similarity." (Dkt. 41, at 6) (citing *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 690 (W.D. Tex. 2014), *aff'd*, 656 F. App'x 688 (5th Cir. 2016) ("[E]vidence concerning how many [] hours each [p]laintiff worked is relevant only to damages, not liability."); *see also Metcalfe v. Revention, Inc.*, 2012 WL 3930319, at *6 (S.D. Tex. Sept. 10, 2012) ("Whether individualized determinations are necessary to define the extent of [p]laintiffs' damages, if any, does not weigh against efficiently establishing [d]efendants' class-wide liability."); *Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 935 (S.D. Tex. 2009) ("The need for individual plaintiffs to establish the amount of uncompensated time does not defeat certification.").

Thus, the issues raised by Burke with regard to the number of hours worked and the nature of Work Project assignments are not in fact material to determining whether plaintiffs are similarly situated. Indeed, the central question in this case revolves around whether proposed plaintiffs are entitled to compensation under the FLSA for their time spent on Work Projects while residing at the

Pathfinder-RTC, the determination of which does not depend on differences in the number of hours worked or type of task involved in each Work Project. (*See* Dkt. 19, at 13–17).

### 2. Is Preliminary Discovery Necessary?

Next, the Court must decide whether the Plaintiffs' proposed class is similarly situated as to warrant the issuance of notice, or if further discovery is warranted. *See KLLM*, 2021 WL 98229, at *7 (5th Cir. Jan. 12, 2021). The Court finds Plaintiffs' pleadings and the available evidence demonstrate "sufficient similarity between the plaintiffs' employment situations" because proposed plaintiffs all participated in the "same job" and the "allegations revolve around the same aspect of the job"— namely, that proposed plaintiffs were not compensated for their participation in Work Projects at the direction of Pathfinder-RTC. *Id.*; (Dkt. 19, at 13–17). As such, notice is justified without further discovery.

Burke argues that proposed Plaintiffs are not similarly situated because not all residents participated in Work Projects that involved manual labor, and residents participated in the Work Projects voluntarily. (Resp. Mot. Certify, Dkt. 29, at 4; Def.'s Supp. Brief, Dkt. 42-1, at 2). Plaintiffs respond that to the extent Burke disputes whether residents performed Work Projects voluntarily or that these projects varied in type of task, the central question remains whether proposed plaintiffs performed work that is compensable under the FLSA. (Pls.' Supp. Brief, Dkt. 41, at 5). As such, Plaintiffs argue, whether residents were entitled to compensation under the FLSA for their participation in Work Projects "is an issue that can be adjudicated on a class-wide basis." (*Id.*). The Court agrees.

While Burke argues that the proposed class is "too diverse" to warrant the issuance of notice without additional discovery "demonstrating each resident's involvement in each individual Work Project," Plaintiffs have in fact met their burden of showing the existence of other potential

plaintiffs who are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." (Def.'s Supp. Brief, Dkt. 42-1, at 3); (T.S. Decl., Dkt. 22-1, at 2) ("I estimate that roughly 20 boys live at Pathfinder-RTC at any given time. During any time there, I believe that all of them did uncompensated work for Pathfinder-RTC."); (G.A. Decl., Dkt. 22-1, at 4) ("I observed other kids doing work that was the same as or similar to the work that I did on Work Projects and/or work assignments at the direction of Pathfinder-RTC."); *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824–25 (N.D. Tex. 2007) ("For the class representative to be considered similarly situated to the potential opt in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions.").

Burke does not dispute that Pathfinder-RTC residents engaged in Work Projects, but rather argues that not all potential plaintiffs engaged in physical labor and that residents participated in these projects voluntarily. (Dkt. 24, at 3–4; Def.'s Supp. Brief, Dkt. 42-1, at 2). Regardless of whether potential opt-in plaintiffs engaged in physical or non-physical labor, Plaintiffs have made a sufficient factual showing that the potential class members' claims all center on the same factual nexus and injury—non-payment of wages for completion of Work Projects at the direction of Pathfinder-RTC. (Dkt. 22, at 6); *Barnett v. Countrywide Credit Indus., Inc.*, No. CIV.A.3:01-CV-1182-M, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) ("To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar.") (internal citations removed); *Donihoo v. Dallas Airmotive, Inc.*, 1998 WL 91256, at *1 (N.D.Tex. Feb. 23, 1998) ("[A]n inquiry into the employee's specific job duties . . . is not appropriate in a class lawsuit under Section 216(b).").

To the extent Burke presents a factual dispute as to the voluntariness of Work Projects, this contention is directly contradicted by the affidavits submitted in support of Plaintiffs' motion to certify class and is one that can be "answered collectively." (Def.'s Supp. Brief, Dkt. 42-1, at 2); (T.S. Decl., Dkt. 22-1, at 1) ("With other residents, I was also directed by Pathfinders-RTC to do Work Projects and work assignments"); (*see also* G.A. Decl., Dkt. 22-1, at 4) (same); *KLLM*, 2021 WL 98229, at *7 (5th Cir. Jan. 12, 2021) ("[W]hether merits questions can be answered collectively has nothing to do with endorsing the merits."). The Court thus finds that Plaintiffs have met their burden of showing that a similarly situated group of potential plaintiffs exists, and that no threshold issues prevent the issuance of notice. Therefore, notice is warranted.

## 2. Content and Form of Notice

Burke offers multiple objections to the content and form of Plaintiffs' proposed notice and request for contact information for potential opt-in plaintiffs, arguing that Plaintiffs have failed to "properly support their claim that it is necessary to have access [to resident contact information]" to effect notice. (Resp. Mot. Certify, Dkt. 24, at 5–6). First, it argues that the "proposed Notice is grossly overbroad and without regard to the sensitive information requested" because, although courts have approved similar notices, those instances "did not involve minors." (*Id.* at 5). Burke also says that it may not have contact information for "prior residents' managing conservators, guardian ad litem, attorneys ad litem, DFPS supervisors, and CASA volunteers" and calls Plaintiffs' plan to text potential opt-in plaintiffs "fraught with risk," including "unwanted messages, additional costs, and an invasion of privacy." (*Id.* at 5).

The Court does not share Burke's concerns that providing notice by text message presents such a risky endeavor, as courts in this circuit have increasingly approved of notice to potential class members via text message. *See, e.g.*, *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D.

9

Tex. 2020) ("[P]roviding notice via text message in addition to other traditional notice methods will almost always be appropriate in modern society."); *Thrower v. UniversalPegasus, Int'l Inc.*, 2020 WL 5258521, at *13 (S.D. Tex. Sept. 3, 2020) ("[P]roviding notice via text message serves to further the FLSA's remedial purpose."). In any event, Plaintiffs are correct that Burke's privacy concerns could "be sufficiently assuaged by entry of a protective order." (Reply, Dkt. 25, at 3).

Next, Burke objects to Plaintiffs' request to post proposed notice on the Pathfinder-RTC campus because it "will undermine the Burke Center staffs' efforts to establish critical trust between staff and its residents." (Dkt. 24, at 6). Burke also objects to Plaintiffs' request for electronic consent in two sentences, once again claiming that because proposed opt-in plaintiffs are minors written consent is necessary to "ensure[] minors have had some explanation of the claims alleged in this lawsuit and consent to participating." (*Id.*). Burke further calls Plaintiffs' request to confirm receipt of notice "no more than a guise to remind or persuade putative class members who are current residents to opt-in." (Dkt. 24, at 5). In response, Plaintiffs have offered to confer with Burke to develop an "agreed telephone script to which Plaintiffs would strictly adhere except in answering questions should any be asked." (Dkt. 25, at 4 n.4). As for this and Burke's other objections, the parties shall confer about a joint notice form and consent, and the Court will address any objections that remain after the parties' conference.

Lastly, Burke argues that Plaintiffs' proposed notice seeks to "improperly expand the applicable statute of limitations" under the FLSA by using the complaint's filing date as "the time metric to send Notice" and thus "Plaintiff should only be allowed to contact those limited members from the date that the Notice is actually mailed." (Dkt. 24, at 7–8). Plaintiffs respond that they plan to "request that the Court exercise its discretion to equitably toll the limitations period in this matter due to exceptional circumstances unique to this case." (Reply, Dkt. 25, at 5–6). While Burke is

10

correct that the FLSA two-year statute of limitations for opt-in plaintiffs generally runs from the opt-in date, (Dkt. 24, at 7), the Fifth Circuit allows for equitable tolling of the limitations period if a plaintiff shows that it "acted diligently and the delay concerns extraordinary circumstances." *Caldwell v. Dretke*, 429 F.3d 521, 530 n.23 (5th Cir. 2005). The Court thus declines to deny notice on the basis that certain opt-in plaintiffs' claims may be barred by the FLSA's statute of limitations absent equitable tolling. *See, e.g.*, *Herrera Maldonado v. Infinity Brokerage Co.*, 2016 WL 11581486, at *8 (W.D. Tex. Apr. 20, 2016) ("[T]he Court finds the question of equitable tolling to be premature at the notice stage."); *Sandoz v. Cingular Wireless, LLC*, 2014 WL 3045532, at *4 (W.D. La. July 3, 2014) (explaining that equitable tolling required "fact-specific determinations which cannot not be made until a putative plaintiff actually opts in"). As such, the Court declines to limit the timeframe of Plaintiffs' proposed class for the purposes of notice in the absence of briefing on the issue of equitable tolling.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Plaintiffs' Motion for Conditional Certification, (Dkt. 22), is **GRANTED IN PART**. The motion is granted insofar as the Court will grant Plaintiffs the following relief and no other:

(1) The Court will allow Plaintiffs to provide notice to potential class members encompassed in the following definition and allow potential class members to opt in:

> All current and former residents of Pathfinders-RTC's facility in Driftwood, Texas, who were 21 years old or younger as of August 15, 2020, and who, in addition to their required daily chores, engaged in "Work Projects" and/or work assignments while residing and receiving treatment at Pathfinders-RTC.

(2) Burke shall disclose to Plaintiffs the names, birthdates, last known addresses, and all known contact information (including but not limited to Class Members' email addresses, social media accounts, and telephone numbers; as well as identification of parents or guardians, managing conservators, guardians ad litem, attorneys ad litem, Texas Department of Family and Protective Services ("DFPS") caseworkers and caseworker supervisors, Court Appointed Special Advocates ("CASA") volunteers, and the court with jurisdiction over each Class Member), and dates of residency of the above-defined Class Members. Burke shall provide this information to Plaintiffs within 21 days from the entry of the Court's Order in usable electronic form in order to reduce any delays in sending out notice.

(3) The parties shall confer about the form and content of class notice and consent forms, as well as a proposed schedule for issuing that notice, receiving responses, and briefing Plaintiffs' motion for equitable tolling and class certification. Given the parties' concerns about the limitations period, the parties shall submit a joint proposed class notice and schedule **on or before March 15, 2021**. If the parties cannot agree on the class notice or schedule, they shall submit a joint advisory **on or before March 15, 2021**, in which they describe the areas of their disagreement and request a telephone conference to resolve them.

**SIGNED** on February 22, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE