IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| T.S., by and through his next friend, N.O.; and G.A.; *individually and on behalf of all others similarly situated*, <br><br>　　　*Plaintiffs,* <br><br> v. <br><br> The Burke Foundation d/b/a Burke Center for Youth, <br><br>　　　*Defendant.* | CASE NO. 1:19-cv-809-RP |

# SETTLEMENT AGREEMENT AND RELEASE

　　1. This Settlement Agreement and Release (**"Settlement Agreement"**) is entered into between Plaintiffs ▇▇▇▇ ▇▇▇▇ (**"T.S."**)[1] and ▇▇▇▇▇▇ (**"G.A."**) (collectively, the **"Named Plaintiffs"**), individually and on behalf of the Opt-in Plaintiffs (as defined in Paragraph 3. below); and Defendant The Burke Foundation d/b/a Burke Center for Youth (**"Burke"** or **"Defendant"**). T.S., G.A., and Burke are jointly referred to in this Agreement as the **"Parties."**

# RECITALS

　　2. On August 15, 2019, T.S. and G.A. filed the above-styled lawsuit (the **"Lawsuit"**) on behalf of themselves as well as the similarly-situated Opt-in Plaintiffs (as defined in Paragraph 3. below), asserting, among other things, that Burke failed to pay proper minimum wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (**"FLSA"**) to residents of its residential treatment center then known as "**Pathfinders Ranch**" (located at 20800 FM 150 W, Driftwood, Texas 78619). Plaintiffs alleged that Defendant required them—and other similarly-situated children under its care—to perform unremunerated compensable manual labor in violation of the FLSA and the Texas common law theories of quantum meruit, unjust enrichment, and money had and received.[2]

　　3. On February 22, 2021, the Court issued an order allowing the Named Plaintiffs to provide notice to similarly-situated individuals of their right to opt into the FLSA collective action. During and after an initial and supplemental notice period, 29 individuals successfully opted into the lawsuit

---

[1] Throughout most of the litigation, T.S. was a minor acting through his next friend pursuant to Federal Rule of Civil Procedure 17(c)(2). T.S. has now reached the age of majority.

[2] These Texas common-law claims were brought as a potential class action under Federal Rule of Civil Procedure 23, but class certification under Rule 23 was never sought in this matter.

1

by filing their written consents to join through Class Counsel. These **"Opt-in Plaintiffs"** are listed in the attached Exhibit A.

4. The Parties have been and are engaged in a good faith and bona fide dispute about, inter alia, whether the Named and Opt-in Plaintiffs were employees, whether their work was compensable under any legal theory, the number of hours worked by the Named and Opt-in Plaintiffs during their respective weeks of residence at Pathfinders Ranch, and the amount of wages, if any, owed to them under the FLSA or under Texas common law.

5. The Parties engaged in extensive legal and factual analysis based on written discovery to all Parties, information exchange, and the production of thousands of pages of relevant documents. The Parties recognize that the outcome in the Lawsuit is uncertain and that achieving a result through the litigation process would require significant additional risk, discovery, time, and expense. The Parties' respective counsel vigorously pursued the rights of their clients in good faith, arm's-length settlement discussions and negotiations, which were adversarial and non-collusive.

6. The parties attended a full-day mediation with neutral provider, Jack Wisdom of Martin, Disiere, Jefferson & Wisdom, LLP (who is Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization) on April 4, 2024, and reached an agreement to resolve the Lawsuit the following week by mutually accepting the mediator's proposal to settle the Named and Opt-in Plaintiffs' claims for the aggregate sum of $375,000.00 (the **"Settlement Amount"**).

7. The Named Plaintiffs and their counsel, the Equal Justice Center and Disability Rights Texas (**"Class Counsel"**), have made a thorough and independent investigation of the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the resolution of the Lawsuit as provided in this Settlement Agreement is in the best interests of the Named and Opt-In Plaintiffs, and that the terms set forth in this Settlement Agreement represent and constitute a fair, reasonable, and adequate resolution with respect to amounts the Named and Opt-In Plaintiffs allege are due and owing in connection with the Lawsuit.

8. Burke denies the allegations in the Lawsuit and denies that it engaged in any wrongdoing or violation of law. Burke is entering into this Settlement Agreement because it will eliminate the burden, risk, and expense of further litigation. Except as necessary to enforce the terms of this Settlement Agreement, neither the Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession, or indication by or against Burke of any fault, wrongdoing, or liability whatsoever.

9. The Parties recognize that Court approval of this Settlement may be appropriate or required to effectuate the Settlement and that the Settlement will not become operative until the Court grants approval of it by entry of an "**Approval Order.**"

10. In consideration of the foregoing and the good and valuable consideration described herein, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that the Named Plaintiffs' and the Opt-in Plaintiffs' claims against Burke shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Released Claims (as set forth in Paragraph 18. below) shall be finally and fully compromised,

settled and dismissed as to Burke and Burke's Releasees (as defined in Paragraph 18. below), in the manner and upon the terms and conditions set forth below.

## **COURT APPROVAL PROCESS**

11. This Settlement Agreement does not take effect until the Court approves it. The Parties agree that this Settlement Agreement will not be publicly filed with the Court, but will be filed only under seal or submitted in camera to the Court, unless otherwise ordered by the Court. If the Court requires public filing of the Settlement Agreement, the Parties agree that the Named and Opt-in Plaintiffs' names will be redacted pursuant to the Court's Order granting Plaintiffs' Motion for Leave to Proceed Anonymously due to the highly sensitive matters involved in this litigation (Dkt. 8).

12. The Parties agree to seek (and Defendant will not oppose) to have this Settlement Agreement approved as is, without modification of any portion of the Agreement by the Court; and (b) if the Court requires additional documentation, the Parties agree to work together to provide such documentation. If the Court disapproves any portion of this Agreement, the Parties agree to negotiate in good faith, including participating in mediation, if necessary, to amend this Agreement as necessary to obtain court approval. The Parties agree to stay all other proceedings in the Lawsuit, while they endeavor to obtain the Court's approval of the Settlement Agreement.

13. Within three calendar days after Named Plaintiffs and Defendant have reached an agreement as to the final form of this Settlement Agreement and it is ready for execution by all Parties, Class Counsel shall provide Defendant's counsel a draft motion for final approval of the Settlement Agreement and dismissal with prejudice of this Lawsuit, which the Parties agree to cooperate to attempt to file in the Lawsuit either as a joint motion or by Plaintiffs as unopposed within seven calendar days after Class Counsel provides the draft motion to Defendant's counsel.

14. In the event that the Court does not approve the Settlement Agreement despite the Parties' efforts described in the foregoing paragraphs, this Settlement Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the earliest date of execution of this Settlement Agreement. If this occurs, the Parties shall proceed in all respects as if the Settlement Agreement had not been executed.

## **DISTRIBUTION OF THE SETTLEMENT AMOUNT**

15. Subject to Court approval, the Settlement Amount shall be used to pay: (a) Settlement Awards representing alleged damages to each Named and Opt-in Plaintiff; (b) Service Awards to the Named Plaintiffs as compensation for their efforts in bringing and prosecuting the Lawsuit; and (3) Attorney's fees, costs, and expenses of litigation to Class Counsel. The payments to Named and Opt-in Plaintiffs shall be managed by Simpluris Inc., or, if necessary, another reputable third-party settlement administration firm (the **"Settlement Administrator"**).

16. **Disbursements to Named and Opt-in Plaintiffs**:

   a. Within 14 days after entry of the Approval Order, Burke shall transfer the sum of $244,946.94 **("Plaintiffs' Settlement Fund")** for deposit into the Settlement Administrator's settlement trust account for this Lawsuit to cover Settlement Award payments to be made to the Named and Opt-in Plaintiffs, and Service Award payments to be made to the Named Plaintiffs.

b.  The Plaintiffs' Settlement Fund shall be allocated as set forth in the attached Exhibit A. Class Counsel determined the value of the Named and Opt-in Plaintiffs' Settlement Awards for damages reflected therein by calculating each Plaintiff's respective pro rata share of the total, based on percentages derived by multiplying the number of weeks between the start date and end date of each Plaintiff's corresponding dates of residency at Pathfinders Ranch (verified by Defendant's records of admission and discharge) multiplied by an estimated average hours worked per week by Plaintiffs (calculated after interviews of each Named and Opt-in Plaintiff regarding their best reasonable recollection of weekly hours worked).

c.  Class Counsel shall provide contact information for each Named and Opt-in Plaintiff, and any other necessary information, to the Settlement Administrator so that the Settlement Administrator may promptly distribute Settlement Awards pursuant to this Settlement Agreement. Class Counsel and the Settlement Administrator shall work together to maximize the likelihood that funds are securely received and cashed by the Named and Opt-in Plaintiffs, including, e.g., seeking alternate options for delivery if any Named or Opt-in Plaintiff is unable to receive a check through the mail. The Settlement Administrator shall make multiple efforts to deliver funds if needed, e.g. by reissuing checks rendered void for failure to timely cash them, and making all good faith and reasonable efforts to obtain current mailing addresses if any payments are returned as undeliverable and without a forwarding address. For any Opt-in Plaintiff who is still a minor at the time of disbursement, his share of the Plaintiffs' Settlement Fund shall be deposited by the Settlement Administrator into a Minor's Pooled Trust managed by Huntington Bank and/or Visible National Trust (or, if necessary, other reputable financial institutions) until he reaches the age of majority.

d.  The Settlement Awards for damages to each Named and Opt-in Plaintiff shall be treated as non-wage compensation, to be reported as "Other Income" in Box 3 of IRS Form 1099-MISC, and shall not be subject to FICA and FUTA withholding taxes. Each Named and Opt-in Plaintiff shall be solely and legally responsible to pay any taxes due on his respective amount designated in Exhibit A.

e.  If, at the conclusion of the one year following the date the Plaintiffs' Settlement Fund is transferred to the Settlement Administrator, there is any money remaining because any Named or Opt-in Plaintiff did not provide information required to receive their payment or the payment was otherwise undeliverable, those monies shall be transferred by the Settlement Administrator to Disability Rights Texas's Client Trust Account. Class Counsel shall thereafter periodically make efforts to locate and to distribute the money owed to any Named or Opt-in Plaintiff due unclaimed funds until such time as they are legally obligated to transfer the unclaimed property to the state.

17. **Attorney's Fees, Costs, and Expenses**:

a.  Subject to the Court's approval, Class Counsel shall receive attorney's fees and reimbursement for court costs and advanced expenses in the aggregate amount of $130,053.06. Within 14 days after entry of the Approval Order, Burke shall transfer this

4

sum for deposit into the Equal Justice Center's Operating Account. Class Counsel is responsible for dividing this amount between them according to the terms of their co-counsel agreement. This sum, which is less than 30% of the lodestar value of Class Counsel's work in this matter, will compensate Class Counsel for costs and expenses incurred to date and which will be incurred in settlement administration, and for all work performed in the Lawsuit as of the date of this Settlement Agreement, as well as all of the work remaining to be performed, including but not limited to securing the Court's approval of the Settlement Agreement and working with the Settlement Administrator to make sure that the settlement is fairly and successfully administered and implemented.

b. The attorneys' fees, costs, and expenses paid by Burke pursuant to this Agreement shall constitute full satisfaction of Burke's obligations to pay amounts to any person, attorney or law firm for attorney's fees, costs, and/or expenses in the Lawsuit on behalf of Named and Opt-in Plaintiffs, and shall relieve Burke from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of Named Plaintiffs or any Opt-in Plaintiff. Burke's own legal fees and expenses in the Lawsuit shall be separately borne by Burke.

### RELEASE OF CLAIMS ON BEHALF OF OPT-IN PLAINTIFFS

18. The Named Plaintiffs have authority to enter into this Settlement Agreement on behalf of the Opt-In Plaintiffs, and, except with respect to the Named Plaintiffs' individual obligations set forth in Paragraphs 19, 20, and 21 below, all Opt-In Plaintiffs are bound by the terms of this Settlement Agreement. In consideration of the benefits to be received by the Named and Opt-in Plaintiffs under this Settlement Agreement, upon the Court's entry of the Approval Order, the Named Plaintiffs, on behalf of themselves and the Opt-in Plaintiffs, agree to forever waive, release, discharge, and surrender all causes of action, rights, and demands for wage and hour claims related to any work allegedly performed at Pathfinders Ranch or otherwise for Burke prior to the earliest date of execution of this Settlement Agreement, including any claim for unpaid wages, overtime pay, compensation, interest, actual or compensatory damages, liquidated damages, punitive damages, declaratory or equitable relief, attorney's fees, and costs against Burke and Burke's Releasees (including Burke's past, present, and future parent companies, subsidiaries, affiliates, divisions, agents, employees, owners, members, managers, officers, directors, partners, investors, legal representatives and attorneys, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers). This release includes without limitation all claims in the Lawsuit and any and all other claims arising from, attributable to, or related to the FLSA; the Texas Payday Law; breach of contract claims for unpaid wages; quasi-contractual claims for unpaid wages including quantum meruit, unjust enrichment, and money had and received; and any similar common law claim or state or local law relating to unpaid wages and/or hours worked. The Named Plaintiffs and Class Counsel represent that they are not aware of any pending or potentially actionable claims by any of the Opt-In Plaintiffs against Burke or Burke's Releasees, other than the claims specifically alleged in the Lawsuit and released by this Settlement Agreement.

### GENERAL RELEASE AND WAIVER OF CLAIMS BY NAMED PLAINTIFFS

19. In consideration of the benefits to be received by the Named Plaintiffs under this Settlement Agreement, upon the Court's entry of the Approval Order, the Named Plaintiffs, on behalf of

themselves individually, agree to forever waive, release, discharge, and surrender all causes of action, rights, and demands of any kind whatsoever, whether known or unknown, that the Named Plaintiffs may have or have ever had, prior to the earliest date of execution of this Settlement Agreement, against Burke and Burke's Releasees. In addition to those claims set forth in Paragraph 18 above, the Named Plaintiffs' general release and waiver of claims also includes, but is not limited to:

   a. any and all claims under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) (regarding existing but not prospective claims), the Fair Labor Standards Act (FLSA), the Equal Pay Act, the Employee Retirement Income Security Act (ERISA) (regarding unvested benefits), the Civil Rights Act of 1991, Section 1981 of U.S.C. Title 42, the Fair Credit Reporting Act (FCRA), the Worker Adjustment and Retraining Notification (WARN) Act, the Uniform Services Employment and Reemployment Rights Act (USERRA), the Genetic Information Nondiscrimination Act (GINA), the Immigration Reform and Control Act (IRCA), any claims arising under the Texas Labor Code that may be legally waived and released including the Texas Payday Act, the Texas Anti-Retaliation Act, Chapter 21 of the Texas Labor Code and the Texas Whistleblower Act, all including any amendments and their respective implementing regulations, and any other federal, state, local, or foreign law (statutory, regulatory, or otherwise) that may be legally waived and released; however, the identification of specific statutes is for purposes of example only, and the omission of any specific statute or law shall not limit the scope of this general release in any manner;

   b. any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, paid leave, commissions, incentive compensation, vacation, sick pay, or severance;

   c. any and all claims arising under tort, contract, or quasi-contract law, including but not limited to claims of breach of an express or implied contract, tortious interference with a contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, violation of biometric privacy laws, nonphysical injury, personal injury or sickness, or any other harm, wrongful or retaliatory discharge, fraud, defamation, false imprisonment, and negligent or intentional infliction of emotional distress; and

   d. any and all claims for monetary or equitable relief, including but not limited to, attorneys' fees and costs, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements, punitive damages, liquidated damages, and penalties.

## **NAMED PLAINTIFFS' AGREEMENT TO CONFIDENTIALITY**

20. Named Plaintiffs, on behalf of themselves individually, acknowledge and agree that the terms and provisions of this Agreement shall remain and be kept strictly confidential, and shall not be divulged or disclosed by them, except as otherwise provided herein. Notwithstanding the foregoing, Named Plaintiffs may disclose the terms of the Agreement: (i) to their attorneys, spouses, and tax and/or financial advisors; (ii) as required by any court or government agency; or (iii) as evidence in

6

a subsequent proceeding in which either Party alleges a breach of this Agreement or as a defense to any action by any Party against the other. Other than the exceptions set forth herein, Named Plaintiffs agree that the terms or provisions of this Agreement will not be voluntarily introduced as evidence or otherwise disclosed in any court or governmental proceeding or in any lawsuit.

## **NAMED PLAINTIFFS' AGREEMENT TO NON-DISPARAGEMENT**

21. Named Plaintiffs, on behalf of themselves individually, agree not to make any disparaging remarks, comments, or statements about Defendant, including any posts on social media, including without limitation posting on YouTube, Facebook, X (formerly known as Twitter), Instagram, Snapchat, Tiktok, blogs, or other public forums.

## **MISCELLANEOUS**

22. **Amendment or Modification**. This Agreement may be amended or modified only by a written instrument signed by the Named Plaintiffs and Defendant, or their successors in interest.

23. **Entire Settlement Agreement**. This Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.

24. **Binding on Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of, Named Plaintiffs, Opt-in Plaintiffs, and Defendant, and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate, or reorganize.

25. **Counterparts**. This Agreement may be executed in one or more counterparts, including by electronic signature, facsimile, or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

26. **Cooperation and Drafting**. The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

{*SIGNATURE PAGE FOLLOWS*}

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFF:** _____   Date: 11/12/2024

[redacted], 
Individually and on behalf of all Opt-in Plaintiffs

*Verified by signNow 11/12/2024 19 44 28 UTC*

**PLAINTIFF:** _____   Date: 11/11/2024

[redacted],
Individually and on behalf of all Opt-in Plaintiffs

*Verified by signNow 11/12/2024 02 52 26 UTC*

**DEFENDANT:** _____   Date: _____

The Burke Foundation,
d/b/a Burke Center for Youth

By (Name): _____

Title: _____

8

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

**PLAINTIFF:** _____   Date: _____
T███ S███,
Individually and on behalf of all Opt-in Plaintiffs

**PLAINTIFF:** _____   Date: _____
G███ A███,
Individually and on behalf of all Opt-in Plaintiffs

**DEFENDANT:** _[signature]_____   Date: 6 Nov 2024
The Burke Foundation,
d/b/a Burke Center for Youth

By (Name): STEVE Fournier
Title: Executive Director

8

## EXHIBIT A

| Name | Initials | Start Date | End Date | Gross Service Award | Total Award |
|---|---|---|---|---|---|
| ██████ | T.S. | 4/4/2018 | 1/17/2019 | $4,000.00 | $9,195.02 |
| ██████ | G.A. | 8/3/2016 | 2/15/2018 | $4,000.00 | $13,737.71 |
| ██████ | A.M. | 7/11/2018 | 5/13/2019 | N/A | $5,635.96 |
| ██████ | A.J. | 3/7/2017 | 6/14/2018 | N/A | $8,128.98 |
| ██████ | B.D. | 4/22/2020 | 5/23/2021 | N/A | $7,653.45 |
| ██████ | C.L. | 9/30/2015 | 2/9/2016 | N/A | $2,245.04 |
| ██████ | C.W. | 1/4/2018 | 10/8/2018 | N/A | $4,996.60 |
| ██████ | C.C. | 10/6/2015 | 1/24/2019 | N/A | $21,245.11 |
| ██████ | C.S. | 4/12/2019 | 3/20/2020 | N/A | $6,450.28 |
| ██████ | E.M. | 4/21/2016 | 2/24/2017 | N/A | $5,312.97 |
| ██████ | E.B. | 8/19/2015 | 1/22/2016 | N/A | $2,653.23 |
| ██████ | J.H. | 7/31/2017 | 5/13/2019 | N/A | $11,742.92 |
| ██████ | J.L. | 1/30/2019 | 4/22/2020 | N/A | $8,424.86 |
| ██████ | J.P. | 9/11/2015 | 9/13/2017 | N/A | $12,716.71 |
| ██████ | J.B. | 3/8/2018 | 11/4/2020 | N/A | $18,159.47 |
| ██████ | J.J. | 8/1/2016 | 12/1/2017 | N/A | $8,531.92 |
| ██████ | K.S. | 6/11/2018 | 8/13/2019 | N/A | $7,885.10 |
| ██████ | K.H. | 10/13/2016 | 11/18/2017 | N/A | $7,025.26 |
| ██████ | M.H. | 4/16/2015 | 5/21/2015 | N/A | $586.59 |
| ██████ | M.J.R. | 6/17/2014 | 5/18/2015 | N/A | $5,572.87 |
| ██████ | M.M. | 6/24/2020 | 11/2/2020 | N/A | $2,531.82 |
| ██████ | M.D. | 2/20/2019 | 6/5/2019 | N/A | $1,785.83 |
| ██████ | M.O. | 4/2/2020 | 3/11/2021 | N/A | $6,629.13 |
| ██████ | M.S. | 10/22/2018 | 2/7/2019 | N/A | $1,989.16 |
| ██████ | M.U. | 2/5/2014 | 3/30/2017 | N/A | $19,435.06 |
| ██████ | N.W. | 7/11/2018 | 8/13/2020 | N/A | $14,534.33 |
| ██████ | R.F. | 8/13/2015 | 7/19/2016 | N/A | $5,863.18 |
| ██████ | R.E. | 10/21/2015 | 1/24/2017 | N/A | $7,926.47 |
| ██████ | S.H. | 10/1/2014 | 10/7/2015 | N/A | $6,263.86 |
| ██████ | S.L. | 6/19/2017 | 12/5/2017 | N/A | $2,960.77 |
| ██████ | T.C.R. | 6/10/2019 | 6/23/2020 | N/A | $7,127.28 |